UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* GORDON F.B. ONDIS, Plaintiff, v. CITY OF WOONSOCKET, RHODE ISLAND; SUSAN D. MENARD, in her capacity as Mayor of the City of Woonsocket; JOEL D. MATHEWS, in his capacity as Director of Planning and Community Development of the City of Woonsocket; PAULETTE MILLER, in her capacity as Assistant Director of Planning and Community Development of the City of Woonsocket; OWEN T. BEBEAU, in his capacity as Director of Human Services of the City of Woonsocket; MICHAEL ANNARUMMO, in his capacity as Director of Administration and Director of Public Works of the City of Woonsocket; Defendants. | CIVIL NO. 07-CV-00150-T-DLM |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS**

As requested by the Court at the status hearing on July 10, 2007, Defendants submit this memorandum to address specifically the insufficiency of Relator's allegations in support of the only remaining count of his Complaint (Count I).[1] As discussed at the hearing and in detail below, Relator's Complaint is a sixty-five-page compilation of disconnected conclusory allegations concerning the housing policies of Defendant City of Woonsocket ("City"), based on

[1] As the Court is aware, Judge Mark Wolf in the District of Massachusetts dismissed the other three counts of Relator's Complaint, as well as Count I against the individual Defendants in their personal capacities, prior to transferring the case to this Court for consideration of the remaining motion to dismiss issues. See Feb. 1, 2007 Order (D. Mass. Docket No. 44); Mar. 28, 2007 Memorandum and Order (D. Mass. Docket No. 49) at 7 (stating rationale for transferring case for determination of remaining issues).

a twenty-one-page list of alleged excerpts from submissions by the City to the U.S. Department of Housing and Urban Development ("HUD") that have no connection to how the City actually applies for, spends, and is audited by the federal government for spending, HUD funds. Thus, despite the length of Relator's Complaint and the number of extraneous details and quotations that it contains, Relator's allegations are insufficient because (1) Relator has failed to provide a basis for establishing subject matter jurisdiction in this Court under the "public disclosure-original source rule" of the federal False Claims Act ("FCA"), 31 U.S.C. § 3730(e)(4)(A), and (2) the allegations lack the specificity required for pleadings under Fed. R. Civ. P. 9(b) ("Rule 9(b)") as applied to the FCA. Therefore, the Court should dismiss Relator's Complaint.[2]

## I. The Court Should Dismiss Relator's Complaint Because It Fails to Establish Subject Matter Jurisdiction under the Public Disclosure-Original Source Rule

Relator's allegations are insufficient to establish subject matter jurisdiction in this Court under the public disclosure-original source rule of the FCA.[3] Under that rule, the FCA precludes subject matter jurisdiction where an FCA *qui tam* action is "based upon the public disclosure of allegations or transactions ..., unless ... the person bringing the action is an original source of the information." § 3730(e)(4)(A).

The Court must read this jurisdictional requirement narrowly. See United States ex rel. Precision Co. v. Koch Indus., Inc., 971 F.2d 548, 552 (10th Cir. 1992) ("[S]tatutes conferring

---

[2] The Court stated at the status hearing that it will consider the factual accuracy of Relator's jurisdictional allegations if those allegations are found facially sufficient. See Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001) (If a Rule 12(b)(1) motion constitutes a challenge to the *factual accuracy* "of the jurisdictional facts asserted by the plaintiff," then "the court ... enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction.").

[3] If a Rule 12(b)(1) motion constitutes a challenge to the *sufficiency* of jurisdictional allegations, then the court must "assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction." Valentin, 254 F.3d at 363. The plaintiff's allegations are "usually taken from the complaint, but sometimes augmented by an explanatory affidavit or other repository of uncontested facts." Id.; Estate of Barrett v. United States, 337 F. Supp. 2d 370, 373 (D. Mass. 2004) (on sufficiency challenge, court "may consider certain extrinsic materials without engaging in jurisdictional factfinding or converting the motion to dismiss into one for summary judgment").

jurisdiction on federal courts are to be strictly construed, and doubts resolved against federal jurisdiction."). "The party invoking the jurisdiction of a federal court carries the burden of proving its existence." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (quoting Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993)); see also United States ex rel. LeBlanc v. Raytheon Co., 874 F. Supp. 35, 37 (D. Mass. 1995) (applying standard to public disclosure-original source rule). In doing so, Relator "may not rely on mere conclusory allegations of jurisdiction but must support the facts showing jurisdiction by competent proof." United States ex rel. Hafter D.O. v. Spectrum Emerg. Care, Inc., 190 F.3d 1156, 1162 (10th Cir. 1999). "A mere assertion ... without adequate basis in fact and unsupported by competent proof is insufficient to establish jurisdiction." Id.

**A. The public disclosure-original source rule is intended to preclude complaints like this one.**

The public disclosure-original source rule is "designed to preclude *qui tam* suits *based on information that would have been equally available to strangers to the fraud transaction had they chosen to look for it as it was to the relator*." United States ex rel. Kreindler & Kreindler v. United Technologies Corp., 985 F.2d 1148, 1158 (2d Cir. 1993) (quoting United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co., 944 F.2d 1149, 1155-56 (3d Cir. 1991)) (emphasis added). "Potential accessibility by those not a party to the fraud" is "the touchstone" of the rule. United States ex rel. John Doe v. John Doe Corp., 960 F.2d 318, 322 (2d Cir. 1992).

Relator in this case is, by his own admission, a "stranger to the fraud transaction" alleged. See United States ex rel. O'Keeffe v. Sverdup Corp., 131 F. Supp. 2d 87, 93 (D. Mass. 2001); Ondis Affidavit (attached to D. Mass. Docket No. 45) at 2 ("Neither I nor any of my business entities are in any manner socially, politically, or financially connected to the City of

Woonsocket ...."). He is a major real estate developer who has attempted to make a "federal case" under the FCA out of a political dispute concerning the City's housing policy. See 1/31/07 Transcript at 31 (Judge Wolf suggesting, "This looks like some political policy dispute that people have brought into court and it's dressed up as a False Claims Act [case]."); [4] see also United States ex rel. Alcohol Found., Inc. v. Kalmanovitz Charitable Found., Inc., 186 F. Supp. 2d 458 (S.D.N.Y. 2002) ("public-interest spirit" motivating an FCA action "falls outside the narrower purpose contemplated by the statute" and cannot save action from public disclosure-original source requirements). As such, Relator "does not fit the paradigm of the inside whistleblower" for whom the FCA was intended and, as discussed below, does not meet the requirements of the public disclosure-original source rule. See O'Keeffe, 131 F. Supp. 2d at 93 (distinguishing "inside whistleblower" from "gadfly outsider"); Kreindler, 985 F.2d at 464 n.4 (distinguishing whistleblower "with firsthand knowledge of the wrong and its perpetrators" from "*merely a perceptive third-party*" (emphasis added)).

## B. The components of the alleged false claims were publicly disclosed.

The FCA defines "public disclosure" as "disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media." § 3730(e)(4)(A). However, the FCA does *not* require that an allegation of fraud, itself, be publicly disclosed for the jurisdictional bar to apply. Under the FCA,

> if X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements. In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed. Under the framework, X stands

[4] Citations to the "1/31/07 Transcript" herein refer to the transcript of the January 31, 2007 hearing on the pending motion to dismiss before Judge Wolf of the District of Massachusetts (the transcript was filed with this Court on the day of the July 10 status hearing).

> for the allegedly false set of facts set forth in the claim at issue, and Y is a proxy for the allegedly true set of facts. Thus, when X [the false set of facts] and Y [the true set of facts] surface publicly ... there is little need for *qui tam* actions, and the claim will be barred unless the relator qualifies as an original source.

O'Keeffe, 131 F. Supp. 2d at 94 (quoting United States ex rel. Springfield Terminal Rwy. Co. v. Quinn, 14 F.3d 645, 654-55 (D.C. Cir. 1994) (internal citations omitted)). In this case, both the submissions to HUD ("X"), and the events that allegedly show those submissions to be false ("Y"), were public disclosures before Relator filed his Complaint. See United States ex rel. Feingold v. AdminiaStar Fed., Inc., 324 F.3d 492, 495 (7th Cir. 2003) (public disclosure exists "when the critical elements exposing the transaction as fraudulent are placed in the public domain").[5]

Each of the City's plans and reports at issue, including the Consolidated (5-Year) Plan and annual action plans, was an administrative report, and therefore a public disclosure. See § 3730(e)(4)(A). Moreover, the City submitted each plan and report directly to HUD, which approved them, also making each a public disclosure. See United States v. Bank of Farmington, 166 F.3d 853, 861 (7th Cir. 1999) ("disclosure to the public official responsible for the claim effectuates the purpose of disclosure to the public at large"); United States ex rel. Coleman v. State, No. IP96-0714-C-T/G, 2000 WL 1357791, at *11 (S.D. Ind. 2000) (federal agency approval of plan submitted by state constituted administrative report and, therefore, public disclosure).

At the same time, nearly every one of the events that Relator alleges comprise the City's secret "true" policy was fully disclosed in local news reports, which also constitute public

---

[5] Relator has previously contended that there was no public disclosure in this matter because there had been no public allegation, prior to his own, of false claims by the City. However, the FCA requires only that the individual "X" and "Y" components of an allegation—not the allegation itself—be publicly disclosed. See Feingold, 324 F.3d at 495; Springfield Terminal Rwy. Co., 14 F.3d at 654-55; O'Keeffe, 131 F. Supp. 2d at 94.

disclosure. See § 3730(e)(4)(A). Although Defendants deny Relator's characterization of these events, the underlying events themselves were reported in the Woonsocket newspaper.[6] These include the City's alleged affordable housing rank within the State of Rhode Island (compare Complaint ¶¶ 68-74 with Russ Olivo, *City no longer first in affordable housing*, The Call, Jan. 31, 2004), the City's alleged opposition to certain development plans for land off Rhodes Avenue (compare Complaint ¶¶ 75-80 with Russ Olivo, *WNDC rings up? no sale?*, The Call, Feb. 7, 2001), the City's alleged support for a Wal-Mart store (compare Complaint ¶ 83 with Russ Olivo, *City favors Wal-Mart bid*, The Call, Dec. 9, 2003), the City's alleged support for an apartment building at Mill Street (compare Complaint ¶¶ 84-90 with Russ Olivo, *Zoners OK apartments*, The Call, May 30, 2001, and Russ Olivo, *Builder wants to change permit*, The Call, July 19, 2001, and Russ Olivo, *River Bend could become condos*, The Call, June 29, 2004), the City's alleged opposition to a planned apartment complex at Diamond Hill Road / Fulton Street (compare Complaint ¶¶ 91-97 with Russ Olivo, *City housing plan faces uphill battle*, The Call, Apr. 9, 2001, and Joseph B. Nadeau, *City housing plan on hold*, The Call, Apr. 10, 2001), the City's alleged support for a condominium building at Bancroft Mill (compare Complaint ¶¶ 98-101 with Russ Olivo, *Bancroft mill goes to luxury*, The Call, Oct. 5, 2003), and the Mayor's alleged opposition to a particular state tax provision (compare Complaint ¶¶ 102-113 with Russ Olivo, *City seeks repeal of tax break*, The Call, May 26, 2002, and Russ Olivo, *Mayor pitches housing tax break*, The Call, Feb. 14, 2003).

Relator has previously and mistakenly asserted that there had been no public disclosure in

---

[6] On a 12(b) motion, the Court "may consider 'not only the complaint but also matters fairly incorporated within it and matters susceptible to judicial notice' without converting the motion to dismiss into a motion for summary judgment." Greene v. Rhode Island, 398 F.3d 45, 48 (1st Cir. 2005) (citation omitted); see also Bannon v. Edgewater Med. Ctr., 406 F. Supp. 2d 907, 919 & n.16 (N.D. Ill. 2005) (noting newspaper articles within public record subject to judicial notice on motion to dismiss FCA claim). Each of the newspaper articles referenced herein is attached to the Aff. of Justin P. O'Brien, Esq. in Support of Motion to Dismiss (D. Mass. Docket No. 27).

this case because Defendants have not identified a public record for every event that allegedly indicates the City's secret "true" housing policy. First, the public disclosure-original source rule does not require public disclosure of every allegation. See, e.g., Kreindler, 985 F.2d at 1158 (relator's argument that allegations not "solely" based upon public disclosures was irrelevant); Bannon, 406 F. Supp. 2d at 922 (nondisclosure of single incident "in the overarching fraud" alleged was irrelevant); Feingold, 324 F.3d at 495 (public disclosure exists "when the critical elements ... are placed in the public domain"). Second, Relator's assertion is irrelevant because he has the burden of establishing subject matter jurisdiction, and has not provided in the Complaint the specificity that Rule 9(b) requires by linking each alleged event to specific false claims, see infra II. Moreover, under the theory of Relator's Complaint, nondisclosure of a particular event is irrelevant because Relator's Complaint is directed not at the events individually, but at the alleged secret "true" policy that Relator contends the events collectively prove.

Relator has also contended that submission of the City's plans and reports to HUD could not constitute public disclosures because "every false claim is submitted to the government." See 1/31/07 Transcript at 53. But see Farmington, 166 F.3d at 861; Coleman, 2000 WL 1357791, at *11. In this case, however—unlike in other FCA cases—the information underlying the alleged false claim was "equally available" to other potential relators "had they chosen to look for it" as it was to the relator who brought the case. See Kreindler, 985 F.2d at 1158. Cf. United States ex rel. Rost v. Pfizer, Inc., 446 F. Supp. 2d 6, 18 (D. Mass. 2006) (disclosure to government was not public disclosure where only defendant company and government had access to information constituting false claim); id. ("Actions in which the disclosed information lies only in the hands of the government and the party who disclosed it ... are not parasitic."). In

this case, unlike in other FCA cases, anyone with any interest in the City's housing policy could have brought essentially the same FCA action as Relator has.

**C. The allegations in the Complaint are "based upon" the public disclosures.**

"[A]n action is 'based upon' a public disclosure when the supporting allegations are similar to or the same as those that have been publicly disclosed ... regardless of where the realtor obtained his information." O'Keeffe, 131 F. Supp. 2d at 92 (quoting John Doe Corp., 960 F.2d at 324); see also 1 John T. Boese, Civil False Claims and *Qui Tam* Actions, at 4-84 n.365 (Aspen 2006) (describing this majority rule interpretation of "based upon" adopted by Second, Third, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and D.C. Circuits);[7] United States ex rel. Jones v. Horizon Healthcare Corp., 160 F.3d 326, 332 & n.4 (6th Cir. 1998) (discussing rationale for adopting this interpretation of "based upon"). Here, there is no difference between the allegations in Relator's Complaint and the information in the public disclosures cited above, other than Relator's characterizations of these public disclosures. Consequently, Relator's allegations are based upon public disclosures.

**D. Relator is not an original source.**

Finally, Relator has provided no basis for determining that he is an "original source" under the FCA. An original source is one who "has direct and independent knowledge of the information on which the allegations are based." § 3730(e)(4)(B). "A relator is said to have direct knowledge of fraud when he '*saw [it] with his own eyes*." United States ex rel. Barth v. Ridgedale Elec., Inc., 44 F.3d 699, 703 (8th Cir. 1995) (emphasis added); see also O'Keeffe, 131 F. Supp. 2d at 93 ("A relator's knowledge is 'direct' if she acquired it through her own efforts

[7] The First Circuit has not addressed this issue. But see O'Keeffe, 131 F. Supp. 2d at 93 (D. Mass. case adopting majority rule); 1/31/07 Transcript at 12 (Judge Wolf discussing his consideration of reversing his holding in United States ex rel. LaValley v. First Nat. Bank of Boston, 707 F. Supp. 1351, 1367 (D. Mass. 1988) (Wolf, J.), and adopting majority rule).

*without an intervening agency* ...." (emphasis added)). A relator's knowledge "is 'independent' if her knowledge is not dependent on the public disclosure." O'Keeffe, 131 F. Supp. 2d at 93.

To constitute an original source, "a *qui tam* plaintiff must allege *specific facts—as opposed to mere conclusions*—showing exactly how and when he or she obtained direct and independent knowledge of the fraudulent acts alleged in the complaint *and support those allegations with competent proof*." Hafter D.O., 190 F.3d at 1162 (emphasis added); Bannon, 406 F. Supp. 2d at 920 ( "the court is free to weigh the evidence to determine whether jurisdiction has been established"). "Only in this way will the district court be able to adequately identify legitimate *qui tam* actions and weed out parasitic plaintiffs ...." Hafter D.O., 190 F.3d at 1162.

In this case, Relator provides no "specific facts" that would show that his claims are the product of "direct and independent knowledge." See Hafter D.O, 190 F.3d at 1162; Barth, 44 F.3d at 703. Instead, Relator provides only a conclusory allegation that he "acquired direct, personal knowledge" of the allegations in his Complaint through his own "investigation." See Complaint ¶ 8.

Even Relator's affidavit, supplied in response to Judge Wolf's request *specifically to address this issue*, adds no "specific facts" regarding the source of his allegations about most of the events that allegedly indicate the City's secret "true" policy. See Ondis Affidavit (attached to D. Mass. Docket No. 45) at 4. Relator asserts generally that "at no time was the present lawsuit based upon any news media reports." Id. He then describes his "investigation" into the City's HUD submissions and use of HUD funds. See id. However, he entirely omits any description of the source of his knowledge regarding the events that he alleges indicate the City's secret "true" housing policy. See generally id. It is not evident, from the face of his Complaint or his

affidavit, exactly how he did gain his knowledge of each of these events. Given that most of Relator's allegations *are identical to* newspaper accounts of those same events, Relator completely fails to meet his burden to establish that he is an original source.

For example, Relator's Complaint quotes Defendant Michael Annarummo as stating in regards to a particular development project, "'The rents are too high. I said that from the day they came in here and everybody laughed at me... This isn't Cumberland ....'" See Complaint ¶ 90. This *exact quote* appears in a newspaper report about the same event. See Russ Olivo, *River Bend could become condos*, The Call, June 29, 2004 (attached to D. Mass. Docket No. 27) ("'The rents are too high,' said Administration/Public Works Director Michael Annarummo. 'I said that from the day they came in here and everybody laughed at me ... This isn't Cumberland.'"). Yet Relator nowhere states specifically in his description of his "investigation" exactly where or how he acquired his knowledge of this event, if not from the public record. See generally Complaint; Ondis Affidavit (attached to D. Mass. Docket No. 45). Was he present when this and similar events occurred? Did someone tell him about each event? Did he read about these events in other public documents (if not in newspaper reports), and if so, what documents?[8]

Ironically, the broad conclusory description of Relator's role that he *does* provide on its face makes clear that he is not an original source. Relator has repeatedly emphasized, as his attorney did again at the July 10 status hearing, that Relator is an original source because he was in a "unique position to appreciate and understand the significance of" Defendants' allegedly false representations to the HUD. See Relator's Supplement (D. Mass. Docket No. 45) at 7; see also id. at 4 ("his background and experience ... caused him to be uniquely situated" to

---

[8] Given that Relator's allegations regarding most of the events described in his Complaint are identical to newspaper accounts of those same events, Defendants also reiterate that, if necessary, they will challenge the factual accuracy of Relator's assertion that his allegations are not based on public disclosures.

understand HUD filings); id. at 9 (Relator's "background and experience" enabled him to realize the "existence of false statements"); id. at 10 ("his long housing experience" provided basis for allegations); Ondis Affidavit (attached to D. Mass. Docket No. 45) at 3, 6, 11 (describing Relator's "knowledge beyond [that of] a layperson"). Yet, "expertise and background" are "not enough to qualify [relator] as an original source." O'Keeffe, 131 F. Supp. 2d at 96; see also LeBlanc, 874 F. Supp. at 39 ("special expertise is not good enough to get a relator past the jurisdictional bar"); id. ("background information which enables a putative relator to understand the significance of a publicly disclosed transaction" insufficient); Springfield Terminal Rwy., 14 F.3d at 655 ("[e]xpertise in the field ... would not in itself give a *qui tam* plaintiff the basis for suit when all the material elements of fraud are publicly available, though not readily comprehensible to nonexperts").

Similarly, Relator repeatedly emphasizes that he is an original source because his Complaint is the product of his own research and investigation (often involving secondhand information). See, e.g., Complaint ¶ 8 (describing "investigation initiated by Relator" regarding City housing policies). See generally Ondis Affidavit (attached to D. Mass. Docket No. 45). Yet "secondhand information, ... background information or collateral research" are insufficient to establish "original source" knowledge.[9] Hafter D.O., 190 F.3d at 1162-63; see also Barth, 44 F.3d at 703 ("collateral research and investigations" do not establish direct and independent knowledge); Kreindler, 985 F.2d at 1159 (same). Even where a relator is responsible for creating

---

[9] As Relator's counsel affirmed at the July 10 hearing, even Relator's knowledge of the Mayor's alleged May 14, 2004 statements that she would "get rid of all the Section 8s"—the event that inspired his "investigation"—is apparently only secondhand. See Complaint ¶ 21 (Mayor's comments were made to "Relator's employees," not Relator himself); see also Barth, 44 F.3d at 703-04 (relator was not original source because "he obtained this information through intermediary sources," including interviews of employees, and "was, in effect, simply gathering information"). Even in the one case that Relator has previously cited to support the sufficiency of his "investigation," the relator had observed the conduct at issue "firsthand." See United States ex rel. Lamers v. City of Green Bay, 168 F.3d 1013, 1017 (7th Cir. 1999)

"the 'mosaic' of information that shows a fraud," such effort is insufficient to render him an "original source." Alcohol Found., Inc., 186 F. Supp. 2d at 463.[10]

## II. The Court Should Dismiss Relator's Complaint Because It Lacks the Specificity Required by Rule 9(b) under the FCA

### A. Relator has not specifically alleged any false claim nor alleged specifically how any of the statements listed in his Complaint is false.

The Rule 9(b) requirement of pleading with specificity applies to FCA claims. See United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 228 (1st Cir. 2004). An FCA claim must "set[] forth the 'who, what, when, where, and how' of the alleged fraud," and claims "based upon speculation or conclusory allegations" are insufficient. United States ex rel. Walsh v. Eastman Kodak Co., 98 F. Supp. 2d 141, 147 (D. Mass. 2000) (citation omitted). This requirement "discourage[s] the initiation of suits brought solely for their nuisance value, and safeguards potential defendants from frivolous accusations of moral turpitude." United States ex rel. Williams v. Martin-Baker Aircraft Co., 389 F.3d 1251, 1256 (D.C. Cir. 2004).[11]

In addition, "liability under the [FCA] requires a false claim." Karvelas, 360 F.3d at 232; see also United States v. Rivera, 55 F.3d 703, 709 (1st Cir. 1995) (requiring a "claim for payment"); Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005) ("The act of submitting a fraudulent claim to the government is the '*sine qua non* of a False Claims Act violation.'" (citation omitted)). A defendant's "violation of government regulations … does not impose liability under the FCA unless the provider submits false or fraudulent claims to the

---

[10] The Court inquired specifically at the July 10 hearing whether Relator could be an original source if, as he alleges, his prior experience prompted him to conduct his own investigation of the City's housing policy following the Mayor's alleged "Section 8s" comments. As the foregoing explains, and the caselaw makes clear, this is insufficient to satisfy the public disclosure-original source rule.

[11] "Rule 9(b) has four purposes: First, the rule ensures that defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of …. Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (citation and quotation omitted).

government for payment based on these wrongful activities." Karvelas, 360 F.3d at 232. A false claim includes "'any request or demand ... for money or property' where the government provides or will reimburse any part of the money or property requested." Id. at 225 (quoting 31 U.S.C. § 3729(c)); see Harrison, 176 F.3d at 785 (FCA "at least requires ... a call upon the government fisc ... for liability to attach").

In this case, Relator's Complaint lacks sufficient specificity to meet the requirements of Rule 9(b). Relator attempts to state a case that is far from the typical FCA case, in which a defendant allegedly charges the federal government for providing a specific product or service on a specific date that the defendant demonstrably did not provide. See Boese, supra, at 1-37 (describing "most common" FCA cases). In doing so, Relator includes in his sixty-five-page Complaint a deceptive volume of extraneous details and quotations: Despite all of the irrelevant information and disconnected allegations, Relator nowhere alleges any specific false claim nor states precisely how that claim is false. See Walsh, 98 F. Supp. 2d at 147; see also Corsello, 428 F.3d at 1014. On the contrary, Relator provides only a vague and conclusory allegation:

> Defendants have violated 31 U.S.C. § 3729(a)(1-2) of the False Claims Act on multiple occasions on divers dates between January 1, 2000 and the present in that they have willfully and intentionally:
>
> a) submitted false and/or fraudulent claims for payment to an officer and employee of the United States government; and
>
> b) made, used or caused to be made or used, a false record or statement which caused a false or fraudulent claim to be paid by the Government.

Complaint ¶ 135.

Relator buries this fundamental pleading defect under a pile of irrelevant excerpts from the City's submissions to HUD. Relator lists approximately seventy such excerpts over the course of approximately twenty pages. See Complaint ¶¶ 49-57 (pages 18-38). Yet, the excerpted submissions to HUD are not (nor are they alleged to be), themselves, false claims. See

31 U.S.C. § 3729(c); see also Dookeran v. Mercy Hosp. of Pittsburgh, 281 F.3d 105, 109 (3d Cir. 2002) (application was not a "claim" because it was not "a request or demand for money," but "simply the first step in a process that ultimately might have led … to the authorization of the payment of federal funds").[12]

Relator fails even to make a specific connection between the events that allegedly constitute the City's secret "true policy" and specific representations to HUD. Relator alleges that the City contravened a number of representations to HUD, and alleges that a number of events contravened those representations, but makes no connections between the two. Consequently, Relator repeatedly makes entirely ambiguous allegations, such as:

> Despite representations and assertions to HUD that Woonsocket recognized limited affordable housing opportunities and would take "steps" to preserve existing affordable housing stock throughout the city (referenced herein at ¶ 48f), *such "steps" were not undertaken.*

Complaint ¶ 59 (emphasis added); see also Complaint ¶¶ 58, 60-67.

Relator seems to believe that he can satisfy Rule 9(b) with the quantity, if not the specificity, of his allegations. See, e.g., Relator's Opposition (D. Mass. Docket No. 33) at 8 n.2 ("Relator's pleading of these seventy (70) individual statements"); id. at 10 ("Defendant Menard's name is referenced twenty-six (26) times in the complaint"); id. at 14 ("hundreds of facts averred in the complaint"). Relator asserts that his broad allegations, "repeated again and again," that Defendant City was implementing a secret "true" public policy satisfy the requirements of Rule 9(b). See Relator's Opposition (D. Mass. Docket No. 33) at 7; see also, e.g., Complaint ¶ 32.

Yet, Rule 9(b) as applied to the FCA requires more than simply including a certain

---

[12] Similarly, as discussed at the July 10 hearing, Relator focuses on issues such as the Mayor's alleged statements regarding "Section 8" housing when that is a completely different program from those that appear to form the basis of his case.

number of references to a Defendant's name or alleged statements:

> Underlying schemes and other wrongful activities that result in the submission of fraudulent claims are included in the "circumstances constituting fraud or mistake" that must be pled with particularity pursuant to Rule 9(b). *However, such pleadings invariably are inadequate unless they are linked to allegations, stated with particularity, of the actual false claims* submitted to the government that constitute the essential element of an FCA claim.

Karvelas, 360 F.3d at 232 (emphasis added); see Williams, 389 F.3d at 1257 (requiring pleading with specificity of the "fact misrepresented"). Even under Relator's reading of the term "claim," Relator nowhere points to a specific claim and alleges specifically how that claim was false. Cf. Relator's Opposition (D. Mass. Docket No. 33) at 7 (quoting Complaint ¶¶ 32, 33). This lack of specificity makes it impossible for Defendants to know exactly what they could have or should have done differently, in Relator's mind, to avoid his FCA action. Cf. Harrison, 176 F.3d at 784 (Rule 9(b) intended, in part, to "put [defendant] on notice of the conduct complained of").[13]

In United States ex rel. Garst v. Lockheed-Martin Corp., No. 98 C 5072, 2002 WL 1794004 (N.D. Ill. 2002), aff'd, 328 F.3d 374 (7th Cir. 2003), the district court confronted a similarly deficient complaint. The court held that relator's complaint, although it was lengthy and contained a significant amount of information, failed to satisfy Rule 9(b). Id. at *2-3 (describing relator's "shotgun pleading"). In particular, the complaint lacked the requisite specificity because it

> fails to connect allegedly false statements to specific claims for payment, and it does not state intelligibly *why* each particular claim or statement is false.... [R]elator offers reasons why he believes *all* of the listed claims are false, rather than explaining why each specific claim is false ....

Id. at *3; see also United States ex rel. Goldstein v. Fabricare Draperies, Inc., 236 F. Supp. 2d 506, 507-08 (D. Md. 2002), aff'd, 84 Fed. Appx. 341 (4th Cir. 2004) (complaint failed Rule 9(b)

[13] This lack of specificity, and the uncertainty that it causes, is particularly vexing in this case because the subject matter of the Complaint, as discussed at the July 10 status hearing, is broadly defined policy statements.

because "specificity" it provided was "illusory" and complaint merely contained a "conclusory allegation" that defendant representations were generally false without identifying "each and every specific misrepresentation" defendants allegedly made and how each was false). As in Garst, Relator in this case, despite his lengthy and quotation-filled Complaint, never explains specifically how any particular statement allegedly made to HUD was false, nor connects any particular claim specifically to the events that prove it to be false. Accord Karvelas, 360 F.3d at 233 (relator's complaint "describe[d] at considerable length" the defendants' alleged schemes to violate the FCA through the Medicare and Medicaid programs, but "never specifie[d] the dates or content of *any particular false or fraudulent claim* allegedly submitted to Medicare or Medicaid"); Walsh, 98 F. Supp. 2d at 147 (complaint failed Rule 9(b) because it "merely describes the contracts between the vendor defendants and defendant hospitals, but does not *identify with particularity any sales or claims for payment that were allegedly fraudulent*" (emphasis added)).

**B. Relator has not specifically alleged the role of any defendant in any false claim, nor any connection of most defendants to the claims process.**

Relator also nowhere identifies specifically the role of each individual Defendant in the fraud alleged, as Rule 9(b) requires. See DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987). Rule 9(b) requires that Relator's allegations must "inform each defendant of the nature of his alleged participation in the fraud." Id. "[M]ere knowledge of a [false] claim, rather than any affirmative act by the defendant," is insufficient to establish liability. Boese, supra, at 2-13. Instead, "some degree of participation in the claims process is required." United States v. Pres. & Fellows of Harvard Coll., 323 F. Supp. 2d 151, 186-87 (D. Mass. 2004); see also United States ex rel. Sanders v. E. Ala. Healthcare Auth., 953 F. Supp. 1404, 1414 (M.D. Ala. 1996) (complaint insufficient under FCA because it "does not tie

[defendants'] acts to the submission of false claims or another activity prohibited by" the FCA); United States ex rel. Branigan, 234 F.R.D. 41, 45 (N.D.N.Y. 2005) (dismissing FCA complaint under Rule 9(b) because complaint "provide[d] no means of linking any of the defendant anesthesiologists to the bills" submitted to Medicare).

Relator asserts essentially that he has met the requirements of Rule 9(b) as to each Defendant because he at least identified the job title and provided a generic job description for that Defendant. Compare, e.g., Relator's Opposition (D. Mass. Docket No. 33) at 18 ("The roles of each Defendant are identified and specified. Complaint, ¶¶ 9-15.") with Complaint ¶ 13 ("Defendant Owen Bebeau is Director of Human Services for Defendant City of Woonsocket."). Yet, Relator makes no allegation connecting any of the Defendants to any specific false claim. He makes no specific allegation that any Defendant presented, or caused to be presented, any specific false claim to the government, or did anything to get a specific false claim paid. Cf. Complaint ¶ 135. Furthermore, Relator nowhere alleges the manner or extent to which each of the Defendants "participated in the claims process." See Harvard College, 323 F. Supp. 2d at 186-87; see also, e.g., Complaint ¶¶ 68-74 (describing alleged memorandum by Defendant Bebeau without identifying Defendant Bebeau's specific connection to any false claim). In fact, Relator provides no specific allegations concerning the role of any of the Defendants in a "fraudulent scheme" under the FCA. See Williams, 389 F.3d at 1258 (FCA complaint insufficient where it "name[d] a laundry list of individuals without specifying their relation to the fraudulent scheme").

At most, Relator alleges that Mayor Menard signed, on behalf of the City, each of the alleged certifications submitted to HUD. See, e.g., Complaint ¶¶ 43, 48, 50(a)-(i). But even that is not enough to state a cause of action against the Mayor because those supposed certifications

are not alleged to constitute "claims" for payment. Nor does Relator allege what specific statement in those certifications is false or fraudulent. See, e.g., Williams, 389 F.3d at 1257-58 (complaint failed to identify specifically the "fact misrepresented").[14] As to Defendants Mathews, Miller, Bebeau, and Annarummo, Relator provides even less. See Harvard College, 323 F. Supp. 2d at 188-89 (individual defendant's involvement in subject at issue, including assistance in preparation of submission to government, was insufficient for FCA liability where defendant had no involvement in claims process). The Complaint "mention[s] some of [these] Defendants only in passing" and thus falls well below the Rule 9(b) threshold. United States ex rel. Sanders v. E. Ala. Healthcare Auth., 953 F. Supp. 1404, 1413 (M.D. Ala. 1996).

### C. Relator cannot overcome the lack of particularity in his Complaint by blaming Defendants.

Relator attempts to defend his lack of specificity by stating that the evidence of Defendants' alleged secret fraudulent scheme, which will provide such specificity, is in Defendants' control. See Relator's Opposition (D. Mass. Docket No. 33) at 18-19. The First Circuit, however, has held that a "a *qui tam* relator may not present general allegations in lieu of details of actual false claims in the hope that such details will emerge through subsequent discovery." Karvelas, 360 F.3d at 231; id. (noting concern that, without requiring specificity despite defendants' alleged control of information, "a *qui tam* plaintiff, who has suffered no injury in fact, may be particularly likely to file suit as a pretext"). Thus, Relator cannot overcome the deficiencies in his own Complaint by pointing his finger at the Defendants.[15]

---

[14] Relator's allegation of the certifications at issue is also deceptive. For example, Relator mischaracterizes one of the certifications at the heart of his Complaint by failing to note that it is conditional. Compare 24 C.F.R. §91.225(d) ("HOME Program. Each participating jurisdiction must provide the following certifications: (1) *If it plans* to use HOME funds for tenant-based rental assistance, a certification that rental-based assistance is an essential element of its consolidated plan" (emphasis added)), with Complaint ¶ 50(i).

[15] See 1/31/07 Transcript at 31 (Judge Wolf noting, "The fact that you might learn something in discovery is not sufficient, I believe, under Karvelas to let this case go if you haven't alleged enough.").

Allowing him to do so would only compound the very harm that the application of Rule 9(b) to the FCA is intended to prevent. See Harrison, 176 F.3d at 784 (Rule 9(b) applied to FCA to eliminate "actions in which all the facts are learned after discovery"); Williams, 389 F.3d at 1257 (Rule 9(b) applied to FCA to "safeguards potential defendants from accusations of moral turpitude" and "guarantee[s] all defendants sufficient information" to respond to allegations (citation omitted)).

## Conclusion

For the reasons set forth above, the Court should dismiss the remaining count (Count I) of Relator's Complaint as to all Defendants.

Respectfully Submitted,

**CITY OF WOONSOCKET, RHODE ISLAND; SUSAN D. MENARD; JOEL D. MATHEWS; PAULETTE MILLER; OWEN T. BEBEAU; and MICHAEL ANNARUMMO**
By their Attorneys,

Christopher Lambert (No. 4396)
City Solicitor - City of Woonsocket
169 Main Street
Woonsocket, RI 02895
(401) 767-9201 / (401) 769-0316 fax
email: amathews@woonsocketri.org

Thomas E. Dwyer (Mass. BBO No. 139660) – of counsel
Michael B. Galvin (Mass. BBO No. 630515) – *pro hac vice* motion pending
Justin P. O'Brien (Mass. BBO No. 658765) – *pro hac vice* motion pending
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, MA 02210-2211
(617) 371-1000 / (617) 371-1037 fax
email: jobrien@dwyercollora.com

Dated: July 30, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2007, a copy of the foregoing was sent by first class mail, postage prepaid, to the following counsel of record in this matter:

David C. Clarke
Blais Cunningham & Crowe Chester, LLP
150 Main St.
Pawtucket, RI 02860
Email: dclarke@blaislaw.com

Leon A. Blais
Blais, Parent & Quinn
Cabot Business Park
20 Cabot Blvd.
Mansfield, MA 02048
Email: lblais@blaisparent.com

John P. McAdams
Assistant U. S. Attorney
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Email: john.p.mcadams@usdoj.gov

Christopher Lambert