UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA,
*ex rel.* GORDON F.B. ONDIS,
Plaintiff,

v.

CITY OF WOONSOCKET, RHODE ISLAND and SUSAN D. MENARD, in her capacity as Mayor of the City of Woonsocket,
Defendants.

CIVIL NO. 07-CV-00150-T-DLM

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE**

Defendants City of Woonsocket ("City") and Susan D. Menard (in her capacity as Mayor of the City) have moved to dismiss the First Amended Complaint ("Amended Complaint") in this action brought by *qui tam* relator Gordon F.B. Ondis ("Relator"). Instead of adhering to the Court's direction in dismissing the original complaint, Relator has re-compiled many of the same immaterial, disconnected, and conclusory allegations concerning the City's housing policy. Consequently, Relator's Amended Complaint, though shorter than his original complaint, still fails (1) to constitute a concise statement under Fed. R. Civ. P. 8 by eliminating immaterial and irrelevant allegations, (2) to provide the specificity required for pleadings under Fed. R. Civ. P. 9(b) as applied to the federal False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, and (3) to provide a basis for subject matter jurisdiction in this Court under the FCA's "public disclosure-original source rule."[1] Given the nature of Relator's allegations, it appears that he cannot meet these pleading requirements. Therefore, Defendants respectfully submit that the Court should

[1] As Defendants have submitted numerous memoranda on these issues previously in this matter, they herein state their arguments as briefly as practicable.

dismiss the First Amended Complaint with prejudice.

## I. The Amended Complaint Fails the Concise Statement Requirements of Rule 8 by Including Numerous Irrelevant and Immaterial Allegations.

As the Court has previously noted, the Rule 9(b) requirement of specificity "does not abrogate Rule 8." United States ex rel. Williams v. Martin-Baker Aircraft Co., 389 F.3d 1251, 1256 (D.C. Cir. 2004) (citation omitted). Instead, Rule 9(b) "should be harmonized with the general directives" of Rule 8, such that "the pleadings should contain a 'short and plain statement of the claim or defense' and ... each averment should be 'simple concise and direct.'" Id. (citation omitted).

The Amended Complaint is fundamentally no different from the original complaint. Although Relator has shortened his pleading, he still fails to state his allegations under the FCA concisely. Instead, the Amended Complaint is full of statements that are immaterial and irrelevant to (1) alleging specifically any false claims and (2) stating specifically how or why each claim is allegedly false. Consequently, Relator's Amended Complaint has exactly the same problem that the Court specifically addressed regarding his original complaint. See Transcript, Motion Hearing, Sep. 6, 2007 ("Sep. 6 Trans.") at 16-17, 22 (the Court describing exemplary immaterial statement that "could [not] possibly be deemed a fraudulent statement" and stating "I don't see how it could be the basis for a false claim") (attached hereto at Ex. A).

For example, the Amended Complaint includes a number of alleged City statements such as "There is a continuing need to assist individuals and families who fall below poverty thresholds." Amended Complaint ¶ 32i. Yet the Amended Complaint nowhere asserts how such a statement could possibly be false or what connection it has to any specifically alleged false claim. See also, e.g., id. ¶¶ 30k, 32c, 32n ("The city recognizes its growing minority population."); id. ¶ 30e ("It is widely recognized that affordable housing must be linked with

supportive social services or the cycle of homelessness and poverty will continue.").

Relator also includes similarly immaterial alleged statements from "cover letter[s]" that the City submitted to HUD without stating in any way what specific connection they have to any false claim alleged:

> We look forward to maximizing the allegiance the City has forged with the Department of Housing and Urban Development and other valuable partners. It is through this integration of resources that Woonsocket will achieve the intended public purpose.

Amended Complaint ¶ 32a; see also, e.g., id. ¶ 51 (alleging Mayor used "affordable housing as a political issue to assist her in obtaining name recognition and political stock").

Moreover, Relator continues to focus on Section 8 housing—a program that, as Relator's counsel has previously acknowledged, is entirely distinct from CDBG and other programs that appear to be the subject of his Amended Complaint. See Amended Complaint ¶¶ 5, 13-17 (allegations related to Section 8). At the same time, Relator makes no allegation that the City violated the FCA based on how the City actually spent CDBG and similar funds.[2] Yet Relator includes in the Amended Complaint a number of statements that either are intended to suggest that the City somehow did misuse such funds or are completely irrelevant. See Amended Complaint ¶ 32m ("The housing activities to be undertaken with CDBG, HOME, and ESG funds are consistent with the strategic plan."); id. ¶ 33c ("Mayor Menard ... designated the Development Division as the lead agency to administer the CDBG, HOME and ESG funds").

As a result of these pleading deficiencies, it is no clearer to Defendants under the Amended Complaint than it was under the original complaint exactly what Relator alleges

---

[2] Relator's counsel has acknowledged that this litigation has nothing to do with how the City spends such funds. See Transcript, Motion Hearing, D. Mass. (Jan. 31, 2007) at 29 (Relator's counsel acknowledging that "[t]he complaint does not allege that the specific expenditures that were applied for were not spent in that way, *it probably was spent properly*") (emphasis added) (attached hereto at Ex. B).

constituted a false claim under the FCA.

## II. The Amended Complaint Fails the Specificity Requirements of Rule 9(b).

Although shorter, the Amended Complaint is no more specific as to the requisite "'who, what, when, where, and how' of the alleged fraud." See United States ex rel. Walsh v. Eastman Kodak Co., 98 F. Supp. 2d 141, 147 (D. Mass. 2000) (citation omitted) (describing Rule 9(b) as applied to FCA and holding that claims "based upon speculation or conclusory allegations" are insufficient). Moreover, Relator continues to fail the requirement to "state intelligibly *why* each particular claim or statement is false." See United States ex rel. Garst v. Lockheed-Martin Corp., No. 98 C 5072, 2002 WL 1794004, at *3 (N.D. Ill. 2002), aff'd, 328 F.3d 374 (7th Cir. 2003). As a result, the Amended Complaint fails the requirements of Rule 9(b) in the same manner as the original complaint. See Sep. 6 Trans. at 21, 22-23 (this Court noting that Rule 9(b) requires Relator to allege specifically "how the statements were alleged to be false") (attached hereto at Ex. A).[3]

Relator has again attempted to establish an FCA claim simply by reciting a list of alleged policy statements from the City's submissions to HUD next to an extended description of events that Relator alleges prove the "true policies and practices of Defendants." See Amended Complaint at 10-16 (listing 35 paragraphs and sub-paragraphs of alleged quotations from City's HUD submissions); id. at 6-7, 16-27 (50 paragraphs describing events that allegedly prove secret "true policy"). Inconceivably in light of Rule 9(b), Relator also includes, by generic reference, an illusory list of "other" statements as contributing to the basis for his FCA claim. Id. ¶ 28

[3] "Rule 9(b) has four purposes: First, the rule ensures that defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of .... Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (citation and quotation omitted).

(alleged City statements explicitly listed "are in addition to the statements, certifications, representations and claims made explicitly and implicitly each time Defendant City, acting by and through Mayor Menard, submitted draw downs, invoices, vouchers and other writings specifically requesting funding during the false claim period").

Yet, again, Rule 9(b) requires more:

> Underlying schemes and other wrongful activities that result in the submission of fraudulent claims are included in the "circumstances constituting fraud or mistake" that must be pled with particularity pursuant to Rule 9(b). *However, such pleadings invariably are inadequate unless they are linked to allegations, stated with particularity, of the actual false claims* submitted to the government that constitute the essential element of an FCA claim.

United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 232 (1st Cir. 2004) (emphasis added); see also Williams, 389 F.3d at 1257 (requiring pleading specifically the "fact misrepresented").

Relator again fails to identify specifically any false claims alleged. "[L]iability under the [FCA] requires a false claim." Karvelas, 360 F.3d at 232; see also United States v. Rivera, 55 F.3d 703, 709 (1st Cir. 1995) (requiring a "claim for payment"). Relator has continued to focus, instead, on alleged broad policy statements by the City. Consequently, his allegations are still entirely unlike those in a typical FCA case, in which a defendant charges the federal government for providing a specific product or service on a specific date that the defendant demonstrably did not provide. See 1 John T. Boese, Civil False Claims and *Qui Tam* Actions, at 1-37 (Aspen 2006) (describing "most common" FCA cases).

As discussed with the Court at oral argument on September 6, 2007, the court in Garst confronted a similarly deficient complaint. 2002 WL 1794004, at *3. The Garst court held that the complaint failed to satisfy Rule 9(b) because it

> fails to connect allegedly false statements to specific claims for payment, and it

> does not state intelligibly *why* each particular claim or statement is false.... [R]elator offers reasons why he believes *all* of the listed claims are false, rather than explaining why each specific claim is false ....

Id.; see also United States ex rel. Goldstein v. Fabricare Draperies, Inc., 236 F. Supp. 2d 506, 507-08 (D. Md. 2002), aff'd, 84 Fed. Appx. 341 (4th Cir. 2004) (complaint failed Rule 9(b) because "specificity" it provided was "illusory" and complaint merely contained a "conclusory allegation").

Relator, in the Amended Complaint, similarly fails again to state (1) what constitutes each specific false claim alleged and (2) what specifically indicates how and why each specific alleged false claim is false. Therefore, under Rule 9(b) as under Rule 8, Defendants have no basis for identifying what Relator alleges constituted a false claim.

## III. The Amended Complaint Provides No Basis for Subject Matter Jurisdiction under the Public Disclosure-Original Source Rule.

In dismissing the original complaint, the Court stated that it would address subject matter jurisdiction after determining whether Relator satisfied the requirements for sufficient pleading in his Amended Complaint. See Sep. 6 Trans. at 25, attached hereto at Ex. A. Relator's allegations in the Amended Complaint are again insufficient to establish subject matter jurisdiction in this Court under the public disclosure-original source rule of the FCA. Accordingly, Defendants herein state briefly their argument in this regard.

The FCA precludes subject matter jurisdiction where a *qui tam* action is "based upon the public disclosure of allegations or transactions ..., unless ... the person bringing the action is an original source of the information." § 3730(e)(4)(A). The rule is "designed to preclude *qui tam* suits based on information that would have been equally available to strangers to the fraud transaction had they chosen to look for it as it was to the relator." United States ex rel. Kreindler & Kreindler v. United Tech. Corp., 985 F.2d 1148, 1158 (2d Cir. 1993); see also id. at 464 n.4

(distinguishing whistleblower "with firsthand knowledge of the wrong and its perpetrators" from "merely a perceptive third-party"). "Potential accessibility by those not a party to the fraud" is "the touchstone" of the rule. United States ex rel. John Doe v. John Doe Corp., 960 F.2d 318, 322 (2d Cir. 1992).

"The party invoking the jurisdiction of a federal court carries the burden of proving its existence." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995). In doing so, Relator "may not rely on mere conclusory allegations ... but must support the facts showing jurisdiction by competent proof." United States ex rel. Hafter D.O. v. Spectrum Emerg. Care, Inc., 190 F.3d 1156, 1162 (10th Cir. 1999).

**A. The components of the alleged false claims were publicly disclosed.**

The FCA defines "public disclosure" as "disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media." § 3730(e)(4)(A). However, the FCA does *not* require that an allegation of fraud, itself, be publicly disclosed for the jurisdictional bar to apply. Under the FCA,

> if X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements. In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed. Under the framework, X stands for the allegedly false set of facts set forth in the claim at issue, and Y is a proxy for the allegedly true set of facts. Thus, when X [the false set of facts] and Y [the true set of facts] surface publicly ... there is little need for *qui tam* actions, and the claim will be barred unless the relator qualifies as an original source.

United States ex rel. O'Keeffe v. Sverdup Corp., 131 F. Supp. 2d 87, 94 (D. Mass. 2001).

In this case, both the submissions to HUD ("X"), and the events that allegedly show those submissions to be false ("Y"), were public disclosures before Relator filed his complaint. See

United States ex rel. Feingold v. AdminiaStar Fed., Inc., 324 F.3d 492, 495 (7th Cir. 2003) (public disclosure exists "when the critical elements exposing the transaction as fraudulent are placed in the public domain"). Each City plan and report was an administrative report submitted directly to HUD, which approved them, making each a public disclosure. See § 3730(e)(4)(A); United States v. Bank of Farmington, 166 F.3d 853, 861 (7th Cir. 1999); United States ex rel. Coleman v. State, No. IP96-0714-C-T/G, 2000 WL 1357791, at *11 (S.D. Ind. 2000).

At the same time, nearly every one of the events that Relator continues to allege comprise the City's secret "true" policy was fully disclosed in local news reports, which also constitute public disclosure. See § 3730(e)(4)(A).[4] These include the City's alleged affordable housing rank within the State of Rhode Island (compare Amended Complaint ¶¶ 43-49 with Russ Olivo, *City no longer first in affordable housing*, The Call, Jan. 31, 2004), the City's alleged conflict with the NDC (compare Amended Complaint ¶ 59 with Russ Olivo, *WNDC rings up? no sale?*, The Call, Feb. 7, 2001), the City's alleged support for a Wal-Mart store (compare Amended Complaint ¶ 56 with Russ Olivo, *City favors Wal-Mart bid*, The Call, Dec. 9, 2003), the City's alleged support for an apartment building at Mill Street (compare Amended Complaint ¶¶ 57-62 with Russ Olivo, *Zoners OK apartments*, The Call, May 30, 2001, and Russ Olivo, *Builder wants to change permit*, The Call, July 19, 2001, and Russ Olivo, *River Bend could become condos*, The Call, June 29, 2004), the City's alleged opposition to a planned apartment complex at Diamond Hill Road / Fulton Street (compare Amended Complaint ¶¶ 63-67 with Russ Olivo, *City housing plan faces uphill battle*, The Call, Apr. 9, 2001, and Joseph B. Nadeau, *City housing plan on hold*, The Call, Apr. 10, 2001), the City's alleged support for a condominium building at Bancroft Mill (compare Amended Complaint ¶ 68 with Russ Olivo, *Bancroft mill*

[4] Each of the newspaper articles referenced herein is attached to the Aff. of Justin P. O'Brien, Esq. in Support of Motion to Dismiss (D. Mass. Docket No. 27).

*goes to luxury*, The Call, Oct. 5, 2003), and the Mayor's alleged opposition to a particular state tax provision (compare Amended Complaint ¶¶ 69-78 with Russ Olivo, *City seeks repeal of tax break*, The Call, May 26, 2002, and Russ Olivo, *Mayor pitches housing tax break*, The Call, Feb. 14, 2003).

**B. Relator's allegations are "based upon" the public disclosures.**

"[A]n action is 'based upon' a public disclosure when the supporting allegations are similar to or the same as those that have been publicly disclosed ... regardless of where the realtor obtained his information." O'Keeffe, 131 F. Supp. 2d at 92 (quoting John Doe Corp., 960 F.2d at 324); see also 1 Boese, supra, at 4-84 n.365 (describing this majority rule interpretation of "based upon" adopted by Second, Third, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and D.C. Circuits); United States ex rel. Jones v. Horizon Healthcare Corp., 160 F.3d 326, 332 & n.4 (6th Cir. 1998) (discussing this interpretation of "based upon"). Here, there is no significant difference between the allegations in the Amended Complaint and the information in the public disclosures. Consequently, Relator's allegations are based upon public disclosures.

**C. Relator is not an original source.**

Finally, Relator has provided no basis for determining that he is an "original source." An original source "has direct and independent knowledge of the information on which the allegations are based." § 3730(e)(4)(B). "A relator is said to have direct knowledge of fraud when he 'saw [it] with his own eyes." United States ex rel. Barth v. Ridgedale Elec., Inc., 44 F.3d 699, 703 (8th Cir. 1995). A relator's knowledge "is 'independent' if her knowledge is not dependent on the public disclosure." O'Keeffe, 131 F. Supp. 2d at 93. "[A] *qui tam* plaintiff must allege *specific facts—as opposed to mere conclusions*—showing exactly how and when he or she obtained direct and independent knowledge of the fraudulent acts alleged in the complaint

and support those allegations with competent proof." Hafter D.O., 190 F.3d at 1162 (emphasis added).

In the Amended Complaint, Relator provides no "specific facts" that would show that his claims are the product of "direct and independent knowledge." See Hafter D.O, 190 F.3d at 1162; Barth, 44 F.3d at 703. Instead, Relator first alleges generally that he is an original source based on his expertise and "prior experience" in affordable housing issues. Amended Complaint ¶ 17. Yet "expertise and background" are "not enough to qualify [relator] as an original source." O'Keeffe, 131 F. Supp. 2d at 96; see also LeBlanc, 874 F. Supp. at 39 ("background information which enables a putative relator to understand the significance of a publicly disclosed transaction" insufficient). Relator also alleges that he is an original source because his Amended Complaint is the product of his own "inquiry" into the events alleged. Amended Complaint ¶¶ 5, 17. Yet "secondhand information" and "collateral research" are insufficient to establish "original source" knowledge. Hafter D.O., 190 F.3d at 1162-63; see also Barth, 44 F.3d at 703. Even where a relator creates "the 'mosaic' of information that shows a fraud," such effort does not make him an "original source." Alcohol Found., Inc., 186 F. Supp. 2d at 463.

**Conclusion**

Relator has now had multiple opportunities to address the deficiencies in his pleadings, over more than eighteen months, before both the District of Massachusetts and this Court. Yet, even in his Amended Complaint, Relator still has not met the pleading requirements of Rule 8, Rule 9(b), or the public disclosure-original source rule of the FCA. Therefore, the Court should dismiss the Amended Complaint with prejudice.

Respectfully Submitted,

**CITY OF WOONSOCKET, RHODE ISLAND and SUSAN D. MENARD in her capacity as Mayor of the City of Woonsocket,**

By their Attorneys,

/s/ Christopher Lambert
Christopher Lambert (No. 4396)
City Solicitor - City of Woonsocket
169 Main Street
Woonsocket, RI 02895
(401) 767-9201 / (401) 769-0316 fax
email: amathews@woonsocketri.org

Michael B. Galvin (Mass. BBO No. 630515)
Admitted *pro hac vice*
Justin P. O'Brien (Mass. BBO No. 658765)
Admitted *pro hac vice*
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, MA 02210-2211
(617) 371-1000 / (617) 371-1037 fax
email: jobrien@dwyercollora.com

Dated: October 22, 2007

## CERTIFICATE OF SERVICE

I, Christopher Lambert, certify that the foregoing document was filed electronically on October 22, 2007 using the ECF system, through which it is available for downloading and viewing, and was served electronically through ECF on the following counsel of record:

David C. Clarke
Blais Cunningham & Crowe Chester, LLP
150 Main St.
Pawtucket, RI 02860
Email: dclarke@blaislaw.com

Leon A. Blais
Blais, Parent & Quinn
Cabot Business Park, 20 Cabot Blvd.
Mansfield, MA 02048
Email: lblais@blaisparent.com

John P. McAdams
Assistant U. S. Attorney
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Email: john.p.mcadams@usdoj.gov

/s/ Christopher Lambert
Christopher Lambert