UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>*ex rel.* GORDON F.B. ONDIS<br><br>Plaintiff / Relator,<br><br>vs.<br><br>CITY OF WOONSOCKET, RHODE ISLAND;<br>and SUSAN D. MENARD, in her capacity as<br>Mayor of the City of Woonsocket, Rhode Island<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 07-150T |

**RELATOR'S OBJECTION TO MOTION TO DISMISS**

Relator herewith objects to Defendants' Motion to Dismiss and files his Memorandum of Law concurrent herewith.

Respectfully Submitted,

United States of America, *ex rel*
GORDON F.B. ONDIS
By his Attorneys,

/s/ David C. Clarke

David C. Clarke, Esq. (#6376)
BLAIS CUNNINGHAM
& CROWE CHESTER
150 Main Street, P.O. Box 1325
Pawtucket, Rhode Island 02862
(401) 723-1122 (tel)
(401) 726-6140 (fax)
dclarke@blaislaw.com

/s/ Leon A. Blais
Leon A. Blais, Esq.,
by *Pro Hac Vice Admission*
BLAIS AND PARENT
20 Cabot Blvd.
Suite 300
Mansfield, MA 02048
508 618-1280
866 329-6175 fax
LBlais@BlaisParent.com

**Certification**

This document was filed using the Court's ECF system. All counsel of record were thereby served. Copies of this document are available by means of the Court's PACER system.

/s/ Leon A. Blais

Leon A. Blais

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>*ex rel.* GORDON F.B. ONDIS<br><br>Plaintiff / Relator,<br><br>vs.<br><br>CITY OF WOONSOCKET, RHODE ISLAND;<br>and SUSAN D. MENARD, in her capacity as<br>Mayor of the City of Woonsocket, Rhode Island<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 07-150T |

**MEMORANDUM OF LAW IN SUPPORT OF RELATOR'S OBJECTION TO MOTION TO DISMISS**

In support of its Objection to Defendants' Motion to Dismiss, Relator argues and avers as follows:

The arguments for dismissal are generally categorized under two headings: Lack of Subject Matter Jurisdiction and the paradoxical contention that Relator's complaint at once is not clear and concise but yet lacks particularity.

***Subject Matter Jurisdiction***

Subsequent to this matter being last before the Court, a case eerily similar to the one at bar has been decided by a New York District Court.

In a Southern District of New York case a fair housing advocacy group brought a False Claims Act action against the government of Westchester County alleging, as Relator does at bar, that certifications filed by the county government to obtain

Community Development Block Grant ("CDBG") and other funds were false claims within the meaning of the FCA. United States ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. v. Westchester County, 495 F. Supp. 2d 375 (D.N.Y. 2007). The analysis offered in the only case that so clearly and closely tracks the one brought by Relator should be greatly persuasive.

As is the norm in FCA cases, the Defendant invested considerable resources in attempting to stop the New York litigation via a motion to dismiss which, not surprisingly, also relied upon two theories: lack of subject matter jurisdiction and lack of particularity. The Motion to Dismiss was denied after analysis under both theories.

## I. IN ORDER FOR "PUBLIC DISCLOSURE" TO BE A BAR TO FCA LITIGATION THE RELATOR MUST NOT BE AN "ORIGINAL SOURCE" AND, IF RELATOR IS NOT AN ORIGINAL SOURCE, SUCH DISCLOSURE MUST BE OF A TYPE SPECIFIED IN THE STATUTE.

Defendants seek dismissal by contending that Relator is not an "original source" of the allegations contained in the complaint and, therefore, the Court is denied jurisdiction because of "public disclosure" of the allegations.

> (e) Certain actions barred.
> . . . .
> (4)(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government [sic] Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
>
> (B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4); *see also Rockwell Int'l Corp. v. United States*, 127 S. Ct.

1397, 1405-06, 167 L. Ed. 2d 190 (2007) (noting the jurisdictional nature of Section 3730(e)(4)).

Setting aside for the moment the question of whether Gordon F. B. Ondis is an original source, as he contends, the Court's jurisdiction stands nevertheless because even if Relator's complaint was based upon "public disclosure" such disclosure was not of the type proscribed by the statute.

Defendants argue that the pending action is based upon public disclosure in the form of news reports and in submissions to HUD reviewed by Relator and/or his agents. Defendant's Memo, 7-9. In so doing, they point to a few newspaper articles and the filings with HUD that, in many cases, constitute portions of the scheme of false filings.[1]

The news articles form but a very small portion of the totality of allegations made by Relator and can hardly form the basis of this action.

Defendants, then, rely upon the use of documents obtained by Relator by use of the Freedom of Information Act to buttress their public disclosure argument, contending that the mere act of filing documents with the federal government constitutes public disclosure. Leaving aside the obvious evisceration of the False Claims Act that would result from such an interpretation, the reliance upon fruits of a Freedom of Information Act request is not within the means of public disclosure contemplated in the statute to deny jurisdiction.

This very issue was reached in the Anti-Discrimination Center case recently decided in the New York court:

> Even if the disclosure of information made possible by a statute granting citizens access to government records is a "public" disclosure, the FCA

[1] In the course of their argument, Defendants have admitted the truth of the contents of these few news articles thereby confirming Relator's allegation that Defendants told HUD one thing as a condition of receiving funds and did another.

> jurisdictional bar will only apply if the mode of disclosure is through one of those enumerated in the statute. This requires construction of the phrase "congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation." 31 U.S.C. § 3730(e)(4). Westchester contends that an "administrative . . . report" includes a response from a state agency to a request for documents made pursuant to a state sunshine law like New York's FOIL statute.
>
> United States ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. v. Westchester County, 495 F. Supp. 2d 375, 381 (D.N.Y. 2007)
>
> In sum, although the Center's claim is based on publicly disclose information obtained through a FOIL request, the information was not obtained from a source enumerated in the Section 3730(e)(4)(A) jurisdictional bar. Therefore, the Center's FCA action is not jurisdictionally barred, and Westchester's motion to dismiss for lack of subject matter jurisdiction is denied.
>
> Supra at 383.

Thus the Court may retain jurisdiction without ever reaching the question of whether Relator Ondis is an original source.

**II. BASED UPON THE PUBLIC DISCLOSURE ANALYSIS OF THE ANTI- DISCRIMINATION CENTER COURT, IT IS IMPOSSIBLE FOR PUBLIC DISCLOSURE TO HAVE OCCURRED UNDER THE SVERDUP FORMULA ADVANCED BY BOTH RELATOR AND DEFENDANTS.**

> if X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements. In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed. Under the framework, X stands for the allegedly false set of facts set forth in the claim at issue, and Y is a proxy for the allegedly true set of facts. Thus, when X [the false set of facts] and Y [the true set of facts] surface publicly ... there is little need for *qui tam* actions, and the claim will be barred unless the relator qualifies as an original source.

United States ex rel. O'Keeffe v. Sverdup Corp., 131 F. Supp. 2d 87, 94 (D. Mass. 2001).

At hand, the public statements of Defendant Menard and and others in the few newspaper articles cited by Defendants can be considered to be "X" in the Sverdup

formula. These statements, arguably, constitute a very small portion of the true policy of the city administration hidden from HUD.

However, these statements in themselves mean little without the knowledge of the contrary claims made to HUD. This is the "Y" of the Sverdup formula.

Logically, there can be no public knowledge or disclosure of the Woonsocket fraud without access to both the true policy of the City divulged in minor part through the few news clippings presented by Defendants and that which was reported to HUD.

But, as the New York court accurately points out, obtaining of information via access to public records does not constitute obtaining knowledge of the fraud from a publicly disclosed source. Fruits of FOIA requests simply are not fruits of public disclosure because the public records source employed is not one of those specified in the statute.

Here, as in the New York case, Relator obtained some of his information from a Freedom of Information request. That information is, in part, the basis of his "Y" allegations in this lawsuit. Consequently, the Sverdup formula acknowledged by Defendants as applicable in this case precludes the conclusion that this action is based upon public disclosure.

## III. RELATOR IS AN ORIGINAL SOURCE.

The focus of original source analysis is the subjective knowledge held by the Relator, not on limited facts which form the basis of a few scant newspaper articles which never rise to the status of allegation.

"..the 'information' to which subparagraph (B) [31 U.S.C. §

3730(e)(4)(b)] speaks is the information upon which the relators' allegations are based. To begin with, subparagraph (B) standing on its own suggests that disposition. The relator must have "direct and independent knowledge of the information on which the allegations are based," and he must "provide the information to the Government before filing an action under this section which is based on the information." **Surely the information one would expect a relator to "provide to the Government before filing an action . . . based on the information" is the information underlying the relator's claims.**

Subparagraph (A) [31 U.S.C. § 3730(e)(4)(b)(A)] complicates matters. As described earlier, it bars actions based on the "public disclosure of allegations or transactions" and provides an exception for cases brought by "an original source of the information." **If the allegations referred to in subparagraph (B)'s phrase requiring "direct and independent knowledge of the information on which the allegations are based," are the same "allegations" referred to in subparagraph (A), then original-source status would depend on knowledge of information underlying the publicly disclosed allegations.** The principal textual difficulty with that interpretation is that subparagraph (A) does not speak simply of "allegations," but of "allegations or transactions." **Had Congress wanted to link original-source status to information underlying the public disclosure, it would surely have used the identical phrase, "allegations or transactions"; there is no conceivable reason to require direct and independent knowledge of publicly disclosed allegations but not of publicly disclosed transactions.**

The sense of the matter offers strong additional support for this interpretation. Section 3730(e)(4)(A) bars actions based on publicly disclosed allegations whether or not the information on which those allegations are based has been made public. It is difficult to understand why Congress would care whether a relator knows about the information underlying a publicly disclosed allegation…when the relator has direct and independent knowledge of different information supporting the same allegation... Not only would that make little sense, it would raise nettlesome procedural problems, placing courts in the position of comparing the relator's information with the often unknowable information on which the public disclosure was based. Where that latter information has not been disclosed (by reason, for example, of a reporter's desire to protect his source), the relator would presumably be out of court. To bar a relator with direct and independent knowledge of information underlying his allegations just because no one can know what information underlies the similar allegations of some other person simply makes no sense.

Rockwell, 127 S. Ct. at 1407 (emphasis added).

Paragraph 8 of the complaint specifically sets forth Relator's contention that he is an "original source", identifies the basis of his conclusion and avers facts that underlie his contention. The Court should, in accord with Rule 12 Motion to Dismiss standard of review, accept the facts pled as true and deny Defendants' motion.

In this case, Relator Ondis' status as an "original source" is not based upon his knowledge of any public disclosure. In fact, Relator was in a unique position to appreciate and understand the significance of Defendant Menard's words as she strode into one of his properties vowing to rid Woonsocket of Section 8 housing. As specifically averred in the Complaint, Relator has provided affordable housing in Woonsocket and elsewhere for many years. (Complaint, ¶8.) He was well aware that Woonsocket was the recipient of Community Development Block Grant ("CDBG") and other HUD funds. Upon hearing the Mayor's remarks, Relator knew, based on his own experience, that Woonsocket could not at the same time attempt to remove Section 8 affordable housing and simultaneously receive Community Development Block Grant funding from HUD unless the City and other Defendants made false claims to the federal government. Relator's contention that he is an "original source" is not merely conclusory as suggested by Defendants. The facts underlying Relator's "original source" status are specifically averred in the complaint. (Complaint, ¶¶ 8, 21-30; <u>see</u> <u>also</u> Affs. of Gordon F.B. Ondis and Lee M. Matthews filed in Motion to Dismiss proceedings in the Massachusetts Court).)

An "original source" is defined as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the government before filing [suit]." 31 U.S.C. §

3730(e)(4)(B). This provision has been construed to impose a conjunctive requirement of demonstrating that the relator's knowledge is both direct and independent. See U.S. ex rel. Springfield Terminal Ry. v. Quinn, 14 F.3d 645, 656 (D.C. Cir. 1994). A relator's knowledge is "direct" if she acquired it through her own efforts without an intervening agency, and it is "independent" if her knowledge is not dependent on the public disclosure. See id.; U.S. ex rel. O'Keeffe v. Sverdup Corp., 131 F. Supp. 2d 87, 93 (D. Mass. 2001).

The facts pled by Relator specifically and precisely comply with the definition of “original source” in O’Keeffe as cited by Defendants themselves. There are no facts that suggest that prior to the intrusion of Defendant Menard on the property of Relator there was any realization or awareness by anyone of the frauds perpetrated by Defendants on the government. Moreover, there are no facts suggesting that Relator had even been aware of the existence of the few newspaper articles provided to the Court as evidence of public disclosure. Clearly, the realization of the existence of false statements to the government came to the Relator as a result solely of the Mayor’s pronouncement of her plans for affordable housing in the context of Relator’s background and experience.

Interestingly, while Relator’s knowledge that a fundamental fraud had occurred is based upon his background and experience, he did commission further investigation based upon his recognition of the divergence of Mayor Menard’s stated intention to rid Woonsocket of affordable housing and necessary certifications to obtain HUD funds. Courts have held that even where there was no uniquely situated relator, such as Gordon Ondis, an investigation commissioned by an individual can qualify that person as a relator. “At least one court has held that knowledge obtained through an investigation can

be the basis for a qui tam action. See U.S. ex rel. Hartigan v. Palumbo Bros., Inc., 797 F. Supp. 624, 630-31 (N.D. Ill. 1992)." U.S. ex rel. Lamers v. City of Green Bay, 168 F.3d 1013, 1017 (7th Cir. 1999).

It is not problematic that Relator recognized a likely fraud and then sought information to confirm his suspicions. Indeed, "there are situations in which a relator can derive some of his information about a fraud from public disclosures, but also have direct and independent knowledge of the alleged fraud. Thus, the original source provision does enlarge the category of persons eligible to file *qui tam* suits.

The relator is an "original source" if, in addition to satisfying the requirement of voluntarily disclosing his information to the Government prior to filing suit, the relator had direct and independent knowledge of *another significant part* of the information underlying the lawsuit." 24 Pub. Cont. L.J. 477.

At bar, Relator avers that he had very specific knowledge of the underlying inconsistency of the City's housing policy with required National Housing Objectives and CDBG rules and certifications gained from the Mayor's statements to his employees within the context of his long housing experience. None of this was publicly disclosed by any means.

**IV. DEFENDANTS CONTINUE TO MISSTATE THE NATURE OF COMMUNITY DEVELOPMENT BLOCK GRANT FUNDING.**

CDGB funding is available to entitlement communities such as Woonsocket which demonstrate that they are working toward the National Objectives which, among other things, includes promotion of affordable housing.

Communities may use these federal funds for promotion of affordable housing itself or for other classes of expenditure if the community is pursuing the National

Objectives otherwise.

In Woonsocket's case only a small portion of CDBG funds have been used directly for provision of affordable housing. Most of the money has been used for such things as purchase of fire apparatus, parks improvements, paving, downtown upgrade and other pet projects of Mayor Menard. These expenditures have only been allowed by HUD based upon Woonsocket's statements, invoices, drawdowns, assurances and certifications that it was striving to meet the National Objectives, including the promotion of Fair Housing otherwise.

It is in these statements, assurances and certifications which were used to free federal funds for the Mayor's pet projects that the false statements to the federal government occurred. The City expended funds received from HUD through the CDBG program which would have been legitimate had the allowance of those expenditures not been predicated on the City's truthful representations that it was promoting affordable housing and Fair Housing goals.

Defendants base much of their argument on the notion that Relator's complaint does not specifically refer to a false document such as an invoice as might be found in a government procurement case and, instead, complains that the certifications of policy are themselves the false statements to the government because of the necessity that these statements, assurances and certifications be made as a condition of federal government. In essence, Defendants would rely on the complexity of their misdeeds to escape responsibility. Defendants' Memorandum, 5.

Indeed, they would have the Court reject any FCA claim not based on false claims for price or volume of the proverbial "widget".

The fact that Relator's cause of action is different than the typical FCA case is hardly cause for dismissal. Relator's Amended Complaint, although included in the original version, makes more clear that in addition to alleging false statements, assurances and certifications regarding pursuit of enhanced affordable housing opportunities, the Defendants stand accused of failing to identify their own policy as an impediment to the provision of Fair Housing opportunities.[2] Complaint, ¶ 22 and elsewhere.

Indeed, the Court in Anti-Discrimination Center found false certifications, statements and assurances similar to those at bar to be actionable under the FCA:

> The obligations of grantees are set out in Section 5304, including their duty to certify to the Secretary that, among other things, "the grant will be conducted and administered in conformity with the Civil Rights Act of 1964 [42 U.S.C.A. § 2000a et seq.] and the Fair Housing Act [42 U.S.C.A. § 3601 et seq.], and the grantee will affirmatively further fair housing." Id. § 5304(b)(2); see also Comer v. Cisneros, 37 F.3d 775, 792 (2d Cir. 1994 (finding that under Section 5304, a CDBG grantee must "handle CDBG funds in conformance with the Constitution and applicable civil rights laws").
>
> United States ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. at 386.
>
> At a minimum, when a grantee certifies [**34] that the grant will be "conducted and administered" in conformity with the Civil Rights Act of 1964 and the Fair Housing Act, and certifies that it "will affirmatively further fair housing," the grantee must consider the existence and impact of race discrimination on housing opportunities and choice in its jurisdiction. In identifying impediments to fair housing choice, it must consider impediments erected by race discrimination, and if such impediments exist, it must take appropriate action to overcome the effects of those impediments.
>
> The complaint alleges that Westchester violated the FCA when it submitted a false certification to obtain federal funds. It alleges that Westchester did not consider the existence and impact of race discrimination on housing opportunities and choice but nonetheless certified that it would administer its grant in conformity with the two governing statutes and would affirmatively further fair housing. This is sufficient to state a claim.

[2] Defendants completely fail to address the Fair Housing certifications in their Memorandum of Law.

United States ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. at 387.

***Sufficiency of the Complaint***

**V. RELATOR'S COMPLAINT IS "CLEAR AND CONCISE" AND IS PLEADED WITH THE REQUISITE PARTICULARITY.**

For obvious reasons Defendants would have Relator's Complaint pincered between the requirements of precision and brevity. While this might be an easy balance to find in a case involving a small number of transactions it is no small task amidst a series of grant applications, reports and disbursements spanning several years.

The law provides for sufficient detail to prevent the filing of wild, unsupported allegations against public officials and clarity so as to provide notice to Defendants as to the nature of the allegations against them. Yet, these requirements were never meant to amount, essentially, to defenses used by Defendants to stem legal accountability for their actions. This is what Defendants seek to do by the filing of the instant Motion to Dismiss.

In these proceedings Defendants have admitted, indeed have argued, that the newspaper articles cited by them are true.[3] The implication is that that they changed their public policy without notice to HUD and that they continued to receive federal funds. Defendants now seek to avoid the implications their actions by contrived arguments reminiscent of the days of American jurisprudence prior to the concept of notice pleading.

Indeed, the truth is that had Defendants informed HUD of the true policy of Defendants as partially revealed in the much vaunted newspaper articles Woonsocket would no longer be eligible for CDGB funds and likely would be subject to a demand for

[3] Relator, of course, contends that these articles constitute a small portion of the "true policy" of Woonsocket. Yet, adoption of their veracity by Defendants constitutes a partial admission of the allegations of Relator.

return of funds already advanced. Significantly, funding for Mayor Menard's pet projects would cease and demand for refund of money already spent on these projects would constitute an embarrassing liability upon the city administration.

If Defendants succeed in obtaining dismissal it will be a triumph of form over substance. Indeed, the enormity of the fraud perpetrated on the United States government given the relative size of Woonsocket should not go unchallenged simply because of the competing notions of concision, particularity and the complexity of the fraud committed.

> Rule 9(b) is not, however, to be read in isolation from other procedural canons. As Professor Moore notes, "(t)he requirement of particularity does not abrogate Rule 8, and it should be harmonized with the general directives in subdivisions (a) and (e) of Rule 8 that the pleadings should contain a "short and plain statement of the claim or defense' and that each averment should be "simple concise and direct.' " Viewed in this light, Rule 9(b)'s requirement of particularity is less certain a standard for measuring the sufficiency of a complaint…
>
> United States ex rel. Joseph v. Cannon, 642 F.2d 1373, 1386 (D.C. Cir. 1981).
>
> …although Rule 9(b) does not require plaintiffs to allege every fact pertaining to every instance of fraud when a scheme spans several years, defendants must be able to "defend against the charge and not just deny that they have done anything wrong." Lee, 245 F.3d at 1052 (internal quotation marks omitted).
>
> United States ex rel. Williams v. Martin-Baker Aircraft Co., 363 U.S. App. D.C. 419 (D.C. Cir. 2004).
>
> Rule 9(b) may not require (Relator) to allege, in detail, all facts supporting each and every instance of false testing over a multi-year period. See Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1998) (Where complaint asserting claims of improper revenue recognition identified (i) some of the specific customers defrauded, (ii) the type of conduct at issue, (iii) the general time frame in which the conduct occurred, and (iv) why the conduct was fraudulent, it was" not fatal to the complaint that it [did] not describe in detail a single specific transaction … by customer, amount, and precise method.").

> United States v. Smithkline Beecham Clinical Labs., 245 F.3d 1048, 1051-1052 (9th Cir. 2001).

Relator's Amended Complaint if far from being conclusory. It provides notice to Defendants not only of the false claims in generic terms but by specific citation as well.

By contrast, the Complaint in Anti-Discrimination Center, found to be sufficiently pleaded under Rule 9b, recites only to generic false statements made by Defendants in that action. Relator's Amended Complaint at bar provides notice of specific false statements, detail well beyond that required of the Relator by the New York Court.

> The Center's complaint satisfies the heightened pleading requirement of Rule 9(b). The complaint points out that the certifications Westchester made to the Secretary of HUD in receiving the CDBG money were false, that the statements were made by Westchester itself in its certifications, that they were made between April 1, 2000 to the present in each certification required under the statute, and that the statements were false because Westchester's activities as a matter of policy contradicted its certification affirmatively to further fair housing. Since receipt of the CDBG funds was tied to its certifications, there is strong inference of fraudulent intent. The admissions from Drummond recited in the complaint are further strong evidence of a knowing violation. Overall, the Center has sufficiently pled fraud with particularity as required under Rule 9(b).
>
> United States ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. at 390.

While it is certainly true that Relator's Amended Complaint is longer than that in the New York Case it should be noted that not only has Relator herein provided added particularity but that his complaint deals with false statement regarding not only Fair Housing but with affordable housing policy as well.

To aid the Court in comparison the Complaint in the New York case is appended hereto as Exhibit 1.

## VI. RELATOR'S COMPLAINT PROVIDES THE REQUISITE "WHO, WHAT, WHERE, WHEN AND HOW?" OF THE FRAUD.

Although Relator's Amended Complaint addresses each of above queries in several ways they are answered minimally by the following references within the Complaint:

| | |
|---|---|
| Who? | ¶ 7 |
| What? | ¶¶ 9-12, ¶¶ 28-33. |
| Where? | ¶¶ 6-7. |
| When? | ¶ 9, ¶¶ 28-33. |
| How? | ¶¶ 8-12. |

## ***Conclusion***

For the reasons stated herein and in previous submissions pursuant to Defendants' Motions to Dismiss which are incorporated herein by reference, Relator prays that the pending Motion to Dismiss be denied.

Respectfully Submitted,

United States of America, *ex rel*
GORDON F.B. ONDIS
By his Attorneys,

/s/ David C. Clarke
David C. Clarke, Esq. (#6376)
BLAIS CUNNINGHAM
& CROWE CHESTER
150 Main Street, P.O. Box 1325
Pawtucket, Rhode Island 02862
(401) 723-1122 (tel)
(401) 726-6140 (fax)
dclarke@blaislaw.com

/s/ Leon A. Blais
Leon A. Blais, Esq.,
by *Pro Hac Vice Admission*
BLAIS AND PARENT
20 Cabot Blvd.
Suite 300
Mansfield, MA 02048
508 618-1280
866 329-6175 fax
LBlais@BlaisParent.com

**Certification**

This document was filed using the Court's ECF system. All counsel of record were thereby served. Copies of this document are available by means of the Court's PACER system.

/s/ Leon A. Blais

Leon A. Blais