UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* GORDON F.B. ONDIS, Plaintiff, | |
| v. | CIVIL NO. 07-CV-00150-T-DLM |
| CITY OF WOONSOCKET, RHODE ISLAND and SUSAN D. MENARD, in her capacity as Mayor of the City of Woonsocket, Defendants. | |

**DEFENDANTS' REPLY TO RELATOR'S OBJECTION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH PREJUDICE**

Defendants City of Woonsocket ("City") and Susan D. Menard submit this reply to Relator's Objection to their Motion to Dismiss the First Amended Complaint ("Amended Complaint") with Prejudice.

**I. *ADC* Provides No Support to Relator in Meeting the Pleading Requirements of Rule 8 and Rule 9(b)**

Despite Relator's extensive reliance on United States ex rel. Anti-Discrimination Ctr. of Metro NY, Inc. v. Westchester County, 495 F. Supp. 2d 375 (S.D.N.Y. 2007) (hereinafter "ADC"), that case provides him no support in overcoming the pleading deficiencies of his own Amended Complaint. Indeed, the ADC complaint is "eerily similar," Relator's Objection (Docket No. 19) at 3, only to the extent that both cases address FCA claims concerning federal housing funds to local governments.

Most notably, there was no comparable Rule 8 issue regarding the ADC complaint (which is less than half the length of Relator's Amended Complaint). Instead, both the complaint in ADC and the ADC court's decision regarding defendant Westchester's motion to

dismiss focus clearly on one specific required act that Westchester County allegedly did not take. See ADC, 495 F. Supp. at 388 ("Westchester excluded consideration of impediments to fair housing based on race when it was required by statute to consider them."). Moreover, unlike here, Westchester had allegedly specifically admitted to ADC that it did not meet this requirement, while arguing, instead, that it satisfied its obligations by considering "income disparity as a proxy for race." See id. at 377-78, 388-89; see also ADC Complaint (attached to Relator's Objection), ¶ 47. Consequently, the ADC complaint stated it's allegations concerning this single statutory obligation clearly, directly, and specifically, and the ADC court held that the complaint sufficiently stated an FCA claim. See 495 F. Supp. 2d at 388.

Relator's Amended Complaint is nothing like the ADC complaint. The ADC complaint's focus on a single, demonstrably and admittedly unmet statutory obligation distinguishes that case from the disconnected quotations, policy statements, and events on which Relator has based his Amended Complaint, many of which, as Defendants have noted previously, have nothing to do with any specifically alleged false claim. See, e.g., Amended Complaint (Docket No. 14) ¶¶ 30e, 30k, 32a, 32c, 32i, 32n, 51; see also ADC, 495 F. Supp. 2d at 388 (distinguishing statutorily required act that Westchester admittedly did not perform from "a policy preference").[1] The ADC complaint is not based upon lists of such immaterial statements and events, and does not cite to random quotations without stating how or why such quotations could possibly be false or serve as the basis for an FCA claim. Cf., e.g., Amended Complaint ¶ 32i ("There is a continuing need to assist individuals and families who fall below poverty thresholds."). Unlike defendants in ADC, Defendants in this case continue to face jumbled allegations that provide no clear

[1] Relator's Objection attempts to insert into the case, again, an allegation of misuse of CDBG funds, despite the explicit previous assurance by Relator's counsel that this litigation does not concern how such funds were spent. See Relator's Objection at 14-15; see also Defendants' Memorandum of Law in Support of Motion to Dismiss (Docket No. 18) at 3 & n.2.

guidance as to specifically how they allegedly violated the FCA. Relator's Objection does nothing to clarify the issue or state his allegations more specifically.

## II. Contrary to Relator's Assertions, *ADC* Actually Supports Defendants' Subject Matter Jurisdiction Argument

Relator blatantly misconstrues the ADC court's explication of the public disclosure-original source rule. Paradoxically, ADC directly and explicitly contradicts Relator's primary arguments regarding the application of that rule to this case.

First, ADC *supports* a holding that the City's submissions to HUD constituted public disclosures precisely because they were submitted to HUD. See 495 F. Supp. 2d at 382-83. The ADC court held that the information in the internal state reports at issue in ADC was not publicly disclosed only because it had not been submitted to the federal government. See id.; see also id. at 382 (distinguishing audit prepared for the federal government from an internal state report).

Second, ADC *explicitly states* that information acquired through a public records request, such as Relator's alleged acquisition of the City's submissions to HUD, *can* constitute "publicly disclosed" information. Compare Relator's Objection at 5, 7 ("[f]ruits of FOIA requests simply are not fruits of public disclosure") with 495 F. Supp. 2d at 380 ("The information obtained by the plaintiff through its FOIL request is publicly disclosed information since it was 'equally available' to others as it was to the Center had others 'chosen to look for it.'" (citation omitted and emphasis added)). The only reason that the documents produced pursuant to such a request in ADC did not constitute "public disclosures" is that, again, they were internal state reports not submitted to the federal government. See 495 F. Supp. 2d at 383.

Relator also misrepresents the record in this case regarding the public disclosure-original source rule. He asserts that Defendants have pointed to "a few scant newspaper articles" regarding Relator's allegations. Relator's Objection at 7. In fact, Defendants have tied nearly

every event that Relator alleges indicates the City's secret "true" housing policy to a newspaper account of that event.[2] See Defendants' Memorandum (Docket No. 18) at 8-9.

## III. Relator Essentially Concedes That He Has Not Met and Cannot Meet the Pleading Requirements of Rule 8, Rule 9(b), and the FCA

In his Objection, Relator repeatedly chafes at the combined pleading requirements of Rule 8, Rule 9(b), and the FCA. See Relator's Objection at 2, 14, 15; cf. United States ex rel. Williams v. Martin-Baker Aircraft Co., 389 F.3d 1251, 1256 (D.C. Cir. 2004) (Rule 9(b) "should be harmonized with the general directives" of Rule 8). While acknowledging that his allegations are unlike those of a "typical FCA case," he resorts to an illusory conspiracy theory as grounds for avoiding the pleading requirements that apply to any FCA case. See Relator's Objection at 13 (acknowledging that "Relator's cause of action is different than the typical FCA case"); id. at 2 (asserting that Defendants "rely on the complexity of their misdeeds to escape responsibility"). In doing so, he essentially concedes that his atypical allegations—which involve lists of disconnected excerpts from City submissions to HUD and unrelated events that occurred over almost a decade—do not, and cannot, satisfy the combined pleading requirements of Rule 8 and Rule 9(b):

> While this might be an easy balance to find in a case involving a small number of transactions it is no small task amidst a series of grant applications, reports and disbursements spanning several years.

Id. at 14. But Relator does not stop there. Incredibly, he goes so far as to suggest that this Court should ignore the requirements for sufficient pleading in this case because he has not met and

---

[2] Relator asserts that Defendants have somehow admitted the truth of the events in the various newspaper reports that Defendants have cited in support of their public disclosure argument. See Relator's Objection at 5 n.2, 14. Defendants have in no way done so, and certainly do not agree that these events somehow constitute proof of the secret "true" housing policy alleged. Defendants cite these reports only to establish that the allegations concerning these events were reported in the newspaper and were therefore publicly disclosed. See Defendants' Memorandum (Docket No. 18) at 8-9.

cannot meet them:

> If Defendants succeed in obtaining dismissal it will be a triumph of form over substance. Indeed ... [Woonsocket's alleged fraud] should not go unchallenged simply because of the competing notions of concision, particularity, and the complexity of the fraud committed.

Id. at 15.

Contrary to Relator's desperate assertion, the pleading requirements for his allegations cannot be ignored. See, e.g., Wentner v. Ridgewood Energy Corp., 62 F.3d 1427, at *5 (9th Cir. 1995) (unpublished) ("We are not free to ignore the added pleading requirements of [Rule 9(b)] where the claims at issue are grounded in fraud."). "[T]he necessity for complexity ... does not give litigants license to plead by means of obfuscation." United States ex rel. Garst v. Lockheed-Martin Corp., 2002 WL 1794004, at *2 (N.D. Ill. 2002), aff'd, 328 F.3d 374 (7th Cir. 2003) (quoting Jennings v. Emry, 910 F.2d 1434, 1436 (7th Cir. 1990)). "It goes without saying that a plaintiff with a solid case does not need to file a shotgun complaint." Garst, 2002 WL 1794004, at *2 (citation omitted). Thus, Relator's failure to meet the requirements for his pleadings is grounds for dismissal of the Amended Complaint.

## Conclusion

Relator provides in his Objection no grounds for this Court to find that his allegations meet, or can meet, the requirements of Rule 8, Rule 9(b), and the FCA. Instead, he suggests that this Court ignore those requirements. Therefore, the Court should dismiss the First Amended Complaint with prejudice.

Respectfully Submitted,

**CITY OF WOONSOCKET, RHODE ISLAND and SUSAN D. MENARD in her capacity as Mayor of the City of Woonsocket,**
By their Attorneys,

/s/ Christopher Lambert
Christopher Lambert (No. 4396)
City Solicitor - City of Woonsocket
169 Main Street
Woonsocket, RI 02895
(401) 767-9201 / (401) 769-0316 fax
email: amathews@woonsocketri.org

Michael B. Galvin (Mass. BBO No. 630515)
Admitted *pro hac vice*
Justin P. O'Brien (Mass. BBO No. 658765)
Admitted *pro hac vice*
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, MA 02210-2211
(617) 371-1000 / (617) 371-1037 fax
email: jobrien@dwyercollora.com

Dated: November 9, 2007

## CERTIFICATE OF SERVICE

I, Christopher Lambert, certify that the foregoing document was filed electronically on November 9, 2007 using the ECF system, through which it is available for downloading and viewing, and was served electronically through ECF on the following counsel of record:

David C. Clarke
Blais Cunningham & Crowe Chester, LLP
150 Main St.
Pawtucket, RI 02860
Email: dclarke@blaislaw.com

Leon A. Blais
Blais, Parent & Quinn
Cabot Business Park, 20 Cabot Blvd.
Mansfield, MA 02048
Email: lblais@blaisparent.com

John P. McAdams
Assistant U. S. Attorney
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Email: john.p.mcadams@usdoj.gov

/s/ Christopher Lambert
Christopher Lambert