**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, ex rel GORDON F.B. ONDIS | : | |
| Plaintiff/Relator, | : | Case No. 07-150T |
| v. | : | |
| CITY OF WOONSOCKET, RHODE ISLAND; and SUSAN D. MENDARD, in her capacity as Mayor of the City of Woonsocket, Rhode Island | : | |
| Defendants. | : | |

MEMORANDUM AND ORDER

Ondis brought this *qui tam* action under the False Claims Act ("FCA"), 31 U.S.C. 3729 et seq., against the City of Woonsocket, Rhode Island and its mayor, Susan Menard, alleging that the defendants made false statements to the Department of Housing and Urban Development ("HUD") in connection with the City's application for federal funds from HUD. The defendants have moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim on the ground that the complaint does not satisfy the pleading requirements of Rules 8 and 9(b); and, pursuant to Fed. R. Civ. P. 12(b)(1), on the ground that subject matter jurisdiction is lacking. For the reasons hereinafter

stated, the motion to dismiss pursuant to Rule 12(b)(6) is denied and the motion to dismiss pursuant to Rule 12(b)(1) will be scheduled for an evidentiary hearing.

**Background**

Ondis' initial complaint was 65 pages long and alleged, in very vague terms, that a number of Woonsocket officials had made false statements to HUD regarding their support for affordable housing in connection with an application submitted to HUD for a grant. Because of the complaint's vagueness and prolixity; and, because the complaint did not specify the statements alleged to be false, this Court granted the defendants' motion to dismiss but afforded Ondis an opportunity to amend the complaint.

Availing himself of that opportunity, Ondis has filed a First Amended Complaint which the defendants, also, moved to dismiss on the grounds that the Amended Complaint, still, fails to satisfy the pleadings requirements of Rules 8 and 9(b) and on the ground that this Court lacks subject matter jurisdiction because the allegedly false statements were publicly known and not discovered by the plaintiff.

**Standard of Review**

A motion to dismiss made pursuant to Rule 12(b)(6) may be granted only if it appears that the plaintiffs cannot prove any set of facts entitling them to relief. Rockwell v. Cape Cod Hosp., 26 F.3d 254, 255 (1st Cir.1994). In ruling on such a

motion, the Court takes the well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiffs. Barrios-Velazquez v. Asociacion De Empleados Del Estado Libre Asociado De Puerto Rico, 84 F.3d 487, 489-90 (1st Cir.1996). However, the Court need not credit "bald assertions," subjective characterizations or "unsubstantiated conclusions." Rodi v. Southern New Eng. Sch. Of Law, 389 F.3d 5, 10 (1st Cir.2004). Nor may a plaintiff rest on allegations of a "general scenario which could be dominated by unpleaded facts." Dewey v. Univ. of New Hampshire, 694 F.2d 1, 3 (1st Cir.1982).

By contrast, in ruling on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the Court may engage in preliminary fact-finding to determine whether it has jurisdiction. Valentin v. Hospital Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001). However, if the facts relevant to the jurisdiction question are also relevant to the merits of the claim, the jurisdictional issue should be deferred until the time of trial, unless the relevant facts are undisputed in which case the motion to dismiss should be treated as a Rule 56 motion for summary judgment. Id. at 363 & n.3. "A jurisdictional issue is intertwined with the merits where the court's subject matter jurisdiction depends upon the statute that governs the substantive claims in the case." Gonzalez v. United States, 284 F.3d 281, 287 (1st Cir. 2002).

## Analysis

### I. Sufficiency of the First Amended Complaint

Ordinarily, the Court would address the issue of subject matter jurisdiction before addressing other grounds for dismissal. However, in this case, it would be impossible to decide the jurisdictional question of whether Ondis should be credited with discovering the allegedly false statements unless the complaint coherently alleges the relevant facts and specifies the statements alleged to have been false. The defendants argue that the First Amended Complaint is insufficient and should be dismissed pursuant to Rule 12(b)(6) because it does not meet the pleading requirements of Rule 8 and 9(a).

Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that each averment be "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (e)(1). A complaint that fails to satisfy that requirement is subject to dismissal. Kuehl v. Federal Deposit Insurance Corp., 8 F.3d 905, 908 (1st Cir. 1993).

Rule 9(b) requires that: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." In the context of FCA claims, the First Circuit has said that "Rule 9(b) requires that a

plaintiff's averments of fraud specify the time, place, and content of the alleged false or fraudulent representations." Karvelas v. Melrose-Wakefield Hosptial, 360 F.3d 220, 226 (1st Cir. 2004). The purpose of this particularity requirement is "to give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage strike suits, and to prevent the filing of suits that simply hope to uncover relevant information during discovery." Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996) (internal quotations omitted).

While Ondis' First Amended Complaint may not be a model of pleading, it satisfies the requirements of Rules 8 and 9(b). The First Amended Complaint alleges, inter alia, that, since at least April 2000, the City has participated in a program under which HUD provides federal funds to municipalities for the express purpose of promoting affordable housing and assuring fair housing opportunities. (Amended Complaint ¶ 8.) In order to obtain federal funds, a participating municipality must certify that it will promote fair and affordable housing in accordance with the strategy described in its certification. (Id.) Between April 2000 and February 16, 2005, (the "false claims period"), Woonsocket received approximately $15 million under the program after submitting such certifications signed by Mayor Menard. (¶¶ 9, 19.)

The First Amended Complaint further alleges that these certifications contained representations regarding the efforts by the City and the Mayor to promote fair and affordable housing in the City including statements that:

> a) "The City of Woonsocket will continue to advocate for the preservation of affordable housing and assess opportunities to secure additional rental assistance if and when it becomes available...."
>
> b) "Woonsocket will take steps to preserve the existing affordable housing stock throughout the city."
>
> c) "[Woonsocket] will affirmatively further fair housing, which means it will conduct an analysis of impediments to fair housing choice within the jurisdiction, take appropriate actions to overcome the effects of any impediments identified through that analysis, and maintain records reflecting that analysis and actions in this regard."
>
> d) "[C]opies of the Consolidated Plan, as submitted to HUD, will be sent to the Woonsocket Public Library. The Consolidated Plan will also be available to private citizens upon request."

(¶¶ 30-32.)

The First Amended Complaint also alleges that these statements were materially false because several incidents reveal that the defendants made no effort to promote affordable housing; and, in fact, that they sought to reduce the availability of affordable housing in the City. (¶¶ 13-17, 34-78.) In addition, the First Amended Complaint alleges that, contrary to the defendants' representations, the City failed to undertake an analysis of impediments to fair housing, as

described in their certifications to HUD, and that they failed to make copies of the HUD submissions and the "Consolidated Plan" available to the public. (¶ 31, 33(f).)

Finally, the First Amended Complaint alleges that, if the defendants had been truthful, the City would not have received the federal housing funds that were delivered to it. (¶ 25.)

The defendants argue that the First Amended Complaint does not satisfy the requirements of Rule 9(b) because it does not identify the alleged false "claims" made by the City with sufficient particularity. More specifically, the defendants argue that Ondis has merely identified broad policy statements made by the defendants which are unconnected to any particular claims and that, in order to make such a connection, the First Amended Complaint must explain why each claim is false. In making that argument, the defendants rely on Garst v. Lockheed-Martin Corp., 2002 WL 1794004, at *3 (N.D. Ill. 2002), aff'd, 328 F.3d 374 (7th Cir. 2003), but that reliance is misplaced for two reasons.

First, the statement in Garst that the plaintiffs' FCA complaint should "briefly state why those claims or statements were false" was not a holding but rather was made in the context of explaining to the relator whose two prior complaints had been dismissed, what should be included in his second amended complaint.

In any event, Ondis' complaint does state why the defendants' statements are alleged to have been false. It alleges that the representations regarding the City's support for affordable housing were false because the defendants had indicated, on several occasions, that they were opposed to expanding opportunities for affordable housing. The First Amended Complaint also alleges that the defendants represented that they would undertake an analysis of the impediments to fair housing and that they would make copies of various documents available to the public but they failed to do either.

In short, the First Amended Complaint sufficiently sets forth the "time, place, and content" of each alleged misrepresentation and that is sufficient to satisfy the requirements of Rule 9(b). See Karvelas, 360 F. 3d at 228.

## II. Subject-Matter Jurisdiction

A private party cannot maintain a qui tam action that is based on publicly disclosed information unless he or she is "an original source" of the information. More specifically, the FCA provides:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A). The statute defines an "original source" as "an individual who has direct and independent knowledge of the information on which the allegations are based." 31 U.S.C. § 3730(e)(4)(B)

The purpose of subsection (e)(4) is to discourage the filing of "parasitic" lawsuits by opportunistic relators whose claims are derived solely from information available in the public domain. See United States ex rel. S. Prawer & Co v. Fleet Bank of Me., 24 F.3d 320, 324-26 (1st Cir. 1994). Accordingly, the FCA has been tailored to "walk a fine line between encouraging whistle-blowing and discouraging opportunistic behavior." Id. at 326.

The First Circuit has said that determining whether a relator has satisfied the requirements of subsection (e)(4) involves the following inquiries:

> (1) whether there has been public disclosure of the allegations or transactions in the relator's complaint;
>
> (2) if so, whether the public disclosure occurred in the manner specified in the statute;
>
> (3) if so, whether the relator's suit is "based upon" those publicly disclosed allegations or transactions; and
>
> (4) if the answers to these questions are in the affirmative, whether the relator falls with the "original source" exception as defined in § 3730(e)(4)(B).

United States ex rel. Rost v. Pfizer, Inc., 507 F.3d 720, 728 (1st Cir. 2007).

Here, the defendants assert that all of the information upon which Ondis' First Amended Complaint is based previously had been disclosed publicly. Ondis, on the other hand, asserts that the information had not been disclosed previously and that, even if it had been, he was an "original source" of the information.

Since these conflicting assertions appear to be based on factual disputes, an evidentiary hearing is required to resolve them. Moreover, since the jurisdictional issue of whether Ondis was an original source of the information regarding the statements is separate and distinct from the substantive question of whether the defendants' statements were false, the Court, itself, may make the findings of fact necessary to decide the defendants' Rule 12(b)(1) motion. Accordingly, the Clerk is directed to schedule that motion for an evidentiary hearing.

IT IS SO ORDERED:

Ernest C. Torres
Ernest C. Torres
Senior District Judge
Date: 1/30/08