UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA, :
ex rel. GORDON F.B. ONDIS :
:
:
Plaintiff/Relator, :
: Case No. 07-150T
v. :
:
CITY OF WOONSOCKET, RHODE ISLAND; :
and SUSAN D. MENARD, in her capacity :
as Mayor of the City of Woonsocket, :
Rhode Island :
:
Defendants. :

MEMORANDUM AND ORDER

Gordon Ondis brought this <u>qui</u> <u>tam</u> action under the False Claims Act ("FCA"), 31 U.S.C. § 3729 <u>et</u> <u>seq.</u>, against the City of Woonsocket, Rhode Island and its mayor, Susan Menard, alleging that the defendants made false statements to the Department of Housing and Urban Development ("HUD") in connection with the City's application for federal funds.

The defendants have moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1), claiming that subject matter jurisdiction is lacking because Ondis's allegations are based on information that, previously, was publicly disclosed within the meaning of 31 U.S.C. § 3730(e)(4)(A). For the reasons hereinafter stated, the motion to dismiss is granted.

1

## The Relevant Facts

Based on those allegations that are undisputed and on the evidence presented during a three-day hearing, this Court finds the relevant facts to be as follows.

Between April 2000 and February 16, 2005 (the "False Claims period"), the City of Woonsocket applied for and received grants from HUD totaling approximately $15 million. Some of the grants were Community Development Block Grants, which are provided to assist municipalities in financing a variety of undertakings such as public works projects and social services programs. The other grants were "HOME" funds grants which are provided to create affordable housing for low-income households.

Gordon Ondis is a developer of rental properties whose company, HEDCO Ltd. ("HEDCO"), owns a number of apartment complexes in Woonsocket and other communities. On May 17, 2004, Mayor Menard and two Woonsocket building inspectors met with HEDCO representatives to inspect several rental properties on Fourth Avenue that were owned by HEDCO and to discuss complaints that Menard said she had received regarding loud music, parties and other disturbances emanating from those properties. Ondis did not attend that meeting but was told that Menard made a number of statements indicating hostility toward the Section 8 program that provides rent subsidies to low income persons.

Among the statements attributed to Menard were, "I'm going to get rid of all of these Section 8 tenants."

Ondis, being somewhat familiar with the process by which municipalities obtain HUD grants, directed several of his employees to make a Freedom of Information Act ("FOIA") request for the documents submitted by the City in support of its applications. Ondis also directed his employees to examine any public records bearing on the City's housing policies and to interview individuals who might have information about those policies.

The documents received in response to the FOIA request included a five-year Consolidated Plan, signed by Mayor Menard, which cited the City's need for "affordable" housing and referred to preserving Section 8 rent subsidies as one means of meeting that need. The documents also included Annual Action Plans submitted by the City which contained similar statements and stated that the City would make its Consolidated Plan available for public inspection by filing it in the Woonsocket Public Library.[1]

---

[1] The complaint alleges that the Plan was not filed at the Library but that allegation is not material to the claim of fraud because it is not alleged that HUD relied on that statement in awarding the grants; but, rather, it is alleged that the failure to file the Plan at the library is evidence of the defendants' efforts to conceal the false statements made to HUD.

3

During interviews with local developers and their review of City records, Ondis's employees identified nine instances in which various City officials acted or failed to act in a way that Ondis claims demonstrates the City's hostility toward affordable housing. Some of those instances occurred before 2000 and some occurred after.

On February 16, 2005, Ondis commenced this qui tam action. After reviewing Ondis's claim, the United States Attorney has declined to intervene.

Ondis's First Amended Complaint[2] refers to nine incidents that Ondis claims demonstrate the defendants' bias against "affordable housing." Some of the incidents do not appear to support Ondis's claim. For example, the complaint alleges that, in 1997, Menard eliminated homestead tax exemptions but the complaint states that the exemptions were eliminated for non-subsidized as well as subsidized housing. On the other hand, allegations regarding some of the other incidents, if proven, would appear to support Ondis's claim. For example, the complaint alleges that in 2001, after the City's Planning Director publicly stated that Menard's administration was opposed to subsidized housing "in principle," the Zoning Board

---

[2]The original complaint was dismissed without prejudice for failure to comply with the requirements of Fed. R. Civ. P. 8 and 9(b) but Ondis was given leave to file an amended complaint. United States ex rel. Ondis v. City of Woonsocket,R.I., 2008 WL 282274 (D.R.I. Jan. 31, 2008).

4

twice approved applications to construct multi-residential buildings on the condition that they never be used as federally subsidized housing. The complaint also alleges that, in January 2004, the City's Director of Human Services issued a report stating that a building moratorium imposed by the City was designed to reduce the amount of low-income housing in the City because the City already had done "more than its share of meeting the burden of providing affordable housing."

All but one of the nine incidents and the comments allegedly made in connection with them were reported in either the Woonsocket Call or the Providence Journal or disclosed during a state court suit brought by Woonsocket against two housing partnerships challenging their receipt of tax incentives for having rehabilitated 91 properties within Woonsocket. See Defense Exhibits 1-10, 12, 16-19, & 32 (containing copies of articles from those sources). The only incident not so reported or disclosed was a zoning variance granted to Excel Management in June 1999 which authorized construction of a four unit apartment building and which Ondis claims was granted only after Excel stated that the units would be "affordable" but not "subsidized."

The defendants argue that, pursuant 31 U.S.C. §3730(e)(4)(A), Ondis's claims should be dismissed for lack of subject matter jurisdiction because the information upon which those claims are based had been "publicly disclosed" before Ondis

5

brought this action and because Ondis is not an "original source" of that information. Ondis argues that some of the information was not publicly disclosed; that his claim is not "based upon" any public disclosure; and that, in any event, he was an "original source" of the information.

## Standard of Review

Because federal courts are courts of limited jurisdiction, "'statutes conferring jurisdiction on federal courts are to be strictly construed, and doubts resolved against federal jurisdiction.'" United States ex rel. Precision Co. v. Koch Indus., Inc., 971 F.2d 548, 552 (10th Cir. 1992), cert. denied, 507 U.S. 951, 113 S.Ct. 1364, 122 L.Ed.2d 742 (1993)(internal citation omitted). Accordingly, the party claiming that jurisdiction exists bears the burden of proving it. Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995). ("'[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence.'")(Internal citations omitted).

In order to establish jurisdiction, a qui tam relator "may not rely on mere conclusory allegations . . . but must support the facts showing jurisdiction by competent proof." United States ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc., 190 F.3d 1156, 1162 (10th Cir. 1999). Moreover, in determining whether that burden has been met, a court may engage in

6

preliminary fact finding.  <u>Valentin v. Hosp. Bella Vista</u>, 254 F.3d 358, 363-64 (1st Cir. 2001).

<u>Analysis</u>

I.   <u>The FCA</u>

Civil actions based on alleged violations of the FCA may be brought either by the Attorney General or by a private individual acting on behalf of the United States in what is known as a <u>qui tam</u> action.  31 U.S.C. §3730(a), (b)(1).  However, the FCA limits the circumstances under which a <u>qui tam</u> action may be brought by depriving federal courts of jurisdiction where the action is "based upon the public disclosure of allegations or transactions" and the relator is not the "original source" of the information establishing the fraud.

> More specifically, subsection 3730(e)(4)(A) provides that:
>
> No court shall have jurisdiction over an action under this section based upon the <u>public disclosure</u> of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an <u>original source</u> of the information.  31 U.S.C. §3730(e)(4)(A)(emphasis added).

Subsection (B) defines an "original source" as "an individual who has direct and independent knowledge of the information on which the allegations are based."  31 U.S.C. § 3730 (e)(4)(B).

Consequently, the issue presented by the defendants' motion to dismiss is not whether the defendants made "false statements" regarding their position with respect to "affordable" housing that induced HUD to make the grants in question. That is a question that would have to be resolved at trial. At this stage of the proceedings, the issue is whether the "public disclosure" bar deprives this Court of jurisdiction to adjudicate Ondis's claim.

The purpose of the "public disclosure" bar and the "original source" exception is to "achieve the two goals of discouraging 'parasitic' or 'freeloading' qui tam suits while also encouraging productive private enforcement suits." United States ex rel. Rost v. Pfizer, Inc. 507 F.3d 720, 729 (1st Cir. 2007).

Deciding whether the "public disclosure" bar contained in section 3730(e)(4)(A) applies in this case involves a "three prong inquiry." United States ex rel. O'Keeffe v. Sverdup Corp., 131 F.Supp.2d 87, 91 (D.Mass. 2001). It requires the court to determine whether "(1) there has been a public disclosure within the meaning of the statute; (2) if so, whether the relator 'based' his suit on the public disclosure; and (3) if so, whether the relator is an 'original source of the information.'" Id. (quoting United States ex rel. LaValley v. First Nat'l Bank of Boston, 707 F.Supp. 1351, 1366 (D.Mass. 1988)). See also United States ex rel. Rost v. Pfizer, Inc. 507 F.3d. at 728.

8

II. <u>"Public Disclosure"</u>

It is well established in this circuit and most others that the jurisdictional bar created by subsection (e)(4)(A) is triggered only by the forms of public disclosure specifically enumerated in the statute. <u>O'Keeffe</u>, 131 F.Supp.2d at 91 (Subsection (e)(4)(A)'s "catalogue of sources in which a public disclosure can occur is exhaustive.") (citing <u>United States ex rel. LeBlanc v. Raytheon Co., Inc.</u>, 913 F.2d 17, 20 (1st Cir. 1990) ("[Subsection (e)(4)(A)] does not deny jurisdiction over actions based on disclosures other than those specified .")).

Ondis argues that, even though some of the information on which his claim is based was published in the Woonsocket Call it was not "publicly disclosed" because it appeared in legal notices and/or classified advertisements as opposed to substantive news stories. However, the statute simply describes the "public disclosure" of information to include information "from the news media." It does not require that the information appear in any particular form or section of a newspaper and Ondis has not offered any authority or logical reason for inferring such a requirement.

It is not clear whether "public disclosure" of the information indicating that statements made to the government were false is sufficient to trigger the "public disclosure" bar of subsection (e)(4)(A) or whether the statements, themselves,

9

also must have been "publicly disclosed." However, since a <u>qui tam</u> claim is "based upon" evidence that statements made by the defendant were false, it seems illogical to conclude that a <u>qui tam</u> action may be maintained where all of the evidence of falsity was publicly disclosed, simply because the statements made to the government were not.

In any event, even if one reads subsection (e)(4)(A) as also requiring "public disclosure" of the statements made to the government, that requirement was satisfied by HUD's response to Ondis's FOIA request. Most courts considering the question have held that an agency's "disclosure of information in response to a FOIA request is a 'public disclosure'" because it qualifies as an "'administrative. . . report'" or a response occurring "'in [an]. . . administrative . . . investigation'" within the meaning of subsection (e)(4)(A). <u>United States ex rel. Mistick PBT v. Housing Authority of City of Pittsburgh</u>, 186 F.3d 376, 383 (3rd Cir. 1999)(internal citation omitted). See also <u>United States ex rel. Grynberg v. Praxair, Inc.</u>, 389 F.3d 1038, 1051 (10th Cir. 2004)("[I]t is generally accepted that a response to a request under the FOIA is a public disclosure."); <u>United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.</u>, 384 F.3d 168, 176 (5th Cir. 2004) (affirming the grant of defendants' motion for summary judgment, in part, because agency's response to relator's FOIA request was "public disclosure,"); <u>United States</u>

ex rel. Burns b. A.D. Roe Co., 186 F.3d 717, 723-24 (6th Cir. 1999) ("[I]t is the receipt of FOIA disclosures, like the filing of documents in court, that makes the information actually available to the public."); see also United States ex rel. Rost v. Pfizer, Inc., 507 F.3d at 728 n.5 ("[I]t could also be that when the government itself makes available to the public information which has been disclosed to it, say in response to a FOIA request, the later disclosure by the government constitutes a public disclosure.").

In United States ex rel. Haight v. Catholic Healthcare West, 445 F.3d 1147 (9th Cir. 2006), the Ninth Circuit held that a FOIA response, "standing alone," does not constitute an "administrative report," id. at 1154-55, but that case is readily distinguishable. The decision in Haight was based on the notion that a qui tam action based on information obtained via a FOIA request should not be barred because the information may have buried in an agency's files and not known to the government. Thus the Haight court stated that "[w]hile the government can be expected to be on notice of fraud when the allegations are contained in a public disclosure such as an administrative or congressional hearing, when responding to a FOIA request, the government need not assimilate the information contained in the requested documents." Haight, 445 F.3d at 1155. This case does not raise that concern because, here, it is alleged that HUD not

11

only "assimilated" the defendants' statements in their application regarding "affordable housing" but that HUD actually relied on those statements in awarding grants in question.

III. "Based Upon"

Ondis argues that, even if the facts alleged in his complaint were reported in the "news media," his claim is not "based upon" that "public disclosure" because he was unaware of the newspaper accounts and he based the allegations in his complaint on the results of his own investigation.

There is a split of authority as to whether a qui tam action is "based upon" a "public disclosure" when the facts alleged were publicly disclosed but the relator independently obtained the information from a different source. See O'Keeffe, 131 F.Supp.2d at 92-93 (collecting cases). The majority view is that a qui tam action is "based upon" publicly disclosed information "when the supporting allegations are similar to or 'the same as those that have been publicly disclosed . . . regardless of where the relator obtained his information.'" Id. at 92 (emphasis in original)(quoting United States ex rel. Doe v. John Doe Corp., 960 F.2d 318, 324 (2d Cir. 1994)); see also Mistick, 186 F.3d at 386 ("'based upon' means 'supported by' or 'substantially similar to,' so that the relator's independent knowledge of the information is irrelevant.")(citing cases). On the other hand, the Fourth and Seventh Circuits have construed "based upon" to

12

mean "actually derived from." United States ex rel. Fowler v. Caremark RX, L.L.C., 496 F.3d 730, 738 (7th Cir. 2007); United States ex rel. Siller v. Becton Dickinson & Co., 21 F.3d 1339 (4th Cir. 1994), cert. denied, 513 U.S. 928, 115 S.Ct. 316, 130 L. Ed. 2d 278 (1994).

This Court finds the majority view to be more consistent with both the text of the statute, read as a whole, and its underlying purpose. See United States ex rel. S. Prawer and Co. v. Fleet Bank of Maine, 24 F.3d 320, 324-26 (1st Cir. 1994); O'Keeffe, 131 F.Supp.2d at 93 (following the majority view "because its reading of 'based upon' is consonant with the structure and policies of the FCA.") Focusing solely on the words "based upon" in subsection (e)(4)(A) and narrowly interpreting those words to bar qui tam actions only where the relator actually derived the relevant facts alleged from public disclosures would "render the public disclosure bar's 'original source' exception superfluous." Id. at 93. See United States ex rel. Duxbury v. Ortho Biotech Products, L.P., 551 F. Supp. 2d 100, 107-108 (D.Mass. 2008). The purpose of the "original source" exception is to permit qui tam actions that otherwise would be barred where the relator has "direct and independent" knowledge of the information on which the allegations are based.[3]

---

[3]The exception was created to eliminate the anomaly of barring a qui tam action on the ground that it was based on information that had been publicly disclosed when the information had been

31 U.S.C. § 3730(e)(4)(B). Applying the "public disclosure" bar only where the relator <u>actually</u> obtained the facts alleged in his complaint from the public disclosure is simply another way of saying that the bar does not apply if the relator had "independent" knowledge and, therefore, it would eliminate any need for the "original source" exception. <u>O'Keeffe</u>, 131 F. Supp. 2d at 93; <u>Mistick</u>, 186 F.3d at 386-87. In effect, such an interpretation would "swallow[] the original source exception whole." <u>United States ex rel. Findley v. FPC-Boron Employees' Club</u>, 105 F.3d 675, 684 (D.C. Cir. 1997).

Moreover, applying the jurisdictional bar only in cases where the relator actually relied on publicly disclosed information would cause the jurisdictional inquiry to turn on subjective evidence regarding the relator's state of mind instead of on objective evidence regarding what information was or was not publicly disclosed. It would make the jurisdictional determination dependent on findings with respect to such nebulous factors as whether the relator was aware of the publicly disclosed information and, if so, whether he "based" his allegations on that information or on duplicate information claimed to have been obtained by other means.

---

provided by the relator. <u>See</u> <u>O'Keeffe</u> 131 F. Supp. 2d at 91.

14

As already noted, the only incident referred to in the complaint that was not disclosed in a newspaper account or court proceeding was the Excel variance. However, the fact that the Excel variance was not "publicly disclosed" does not preclude application of the "public disclosure" bar. The allegations regarding the Excel variance add little or nothing to Ondis's claim. Even if Ondis were able to prove that the variance was granted after the <u>applicant</u> stated that the proposed residential units would be "affordable" but not "<u>subsidized,</u>" that fact would not support an inference that the <u>defendants</u> were opposed to "<u>affordable</u>" housing. At most, the allegations regarding the Excel variance involve "additional information [that], even if nonpublic, cannot suffice to surmount the jurisdictional hurdles." <u>See</u> <u>United States ex rel. Springfield Terminal Ry. Co. v. Quinn</u>, 14 F.3d 645, 655 (C.A.D.C. 1994)(A "<u>qui tam</u> action cannot be sustained where all of the material elements of the fraudulent transaction are already in the public domain and the <u>qui tam</u> relator comes forward with additional evidence incriminating the defendant").

IV. <u>"Original Source"</u>

As already noted, the FCA defines an "original source" as "an individual who has direct and independent knowledge of the information on which the allegations [of fraud] are based." 31 U.S.C. § 3730(e)(4)(B).

15

A relator is deemed to have "direct" knowledge of information only if it was obtained through his personal observation or labor. O'Keeffe, 131 F. Supp. 2d at 93. Put another way, the information must have been obtained "first hand" by the relator personally. Findley, 105 F.3d at 690. It is not enough for the relator to obtain the information from other persons who have direct knowledge. O'Keeffe, 131 F. Supp.2d at 95-96 (relator does not have direct knowledge of information obtained from interviews with persons having direct knowledge). That is true even where the information was directly obtained by individuals working under the supervision of the relator. United States ex rel. Fine v. Advanced Sciences, Inc., 99 F.3d 1000 (10th Cir. 1996)(holding that a former employee of Inspector General was not an "original source" of information obtained during an audit performed by auditors working under his supervision).

Here, Ondis concedes that he did not have first-hand knowledge of any of the facts alleged and that his knowledge was derived from reports made to him by his employees based on information that they, in turn, obtained by interviewing third parties and examining public records. Consequently, Ondis did not have "direct" knowledge of the information on which this claim is based.

Ondis, nevertheless, argues that he is an "original source" because his experience in developing subsidized housing made him uniquely qualified to understand and piece together the relevant bits of information necessary to establish the alleged fraud. It is conceivable that there may be cases in which information obtained second hand is so difficult to comprehend that a relator with expertise in the field, who has a unique ability to analyze and understand the information, might be deemed an "original source." However, this is not one of those cases. No specialized training or background is required to understand whether the allegations regarding what the defendants said or did on the occasions referred to in the complaint demonstrate that their statements to HUD were false. See, O'Keeffe, 131 F.Supp.2d at 97 (rejecting argument that relator's "expertise and background" as an engineer allowed him to understand the significance of publicly disclosed information and, therefore, qualified him as an "original source").

## Conclusion

For all of the foregoing reasons, this Court finds that subject matter jurisdiction over Ondis's qui tam action is lacking because the action is "based upon" information that was "publicly disclosed" within the meaning of 31 U.S.C. § 3730(e)(4)(A) and because Ondis is not an "original source" of that

information. Therefore, the defendants' motion to dismiss is granted.

IT IS SO ORDERED:

*/s/ Ernest C. Torres*
Ernest C. Torres
Senior District Judge
Date: 10/7/08